## HARLEY *v.* HARTFORD FRUIT GROWERS & FARMERS EXCHANGE.

1. APPEAL AND ERROR—REFUSAL OF COURT TO DIRECT VERDICT NOT WARRANTED BY RECORD.

   In an action for a claimed balance due on a sale of apples to a corporation, where the record does not disclose that the contract, if made as claimed by plaintiffs, was *ultra vires,* this court, on error, will decline to consider an assignment of error based on the refusal of the trial court to direct a verdict for defendant on the ground that the contract was *ultra vires.*

2. WITNESSES—COLLATERAL ISSUE—CROSS-EXAMINATION — DEFENDANT BOUND BY ANSWER.

   Where there was no question of *ultra vires,* the issue being as to whether defendant corporation purchased plaintiffs' apples, as claimed, the question as to whether defendant had purchased fruit outright from any one other than plaintiffs was a collateral matter, and defendant was bound by witness' answer, brought out on cross-examination, that it had so purchased from a certain individual.

3. CORPORATIONS—CO-OPERATIVE CORPORATION—BY-LAWS FOR REGULATION OF MEMBERS AFFECT MEMBERS ONLY.

A by-law adopted by a co-operative corporation for the regulation of its members, providing that fruit sold by it for them was to be packed in its warehouse, would have no application to fruit purchased outright by it from nonmembers.

4. APPEAL AND ERROR—PARTY MAY NOT COMPLAIN OF FAVORABLE INSTRUCTION.

Where the trial court adopted defendant's construction of a by-law that it prohibited it from purchasing plaintiffs' apples unless packed in its warehouse, and instructed the jury that if plaintiffs had been informed of the substance thereof, as claimed by defendant and denied by plaintiffs, they could not recover, defendant had no ground for complaint that the trial judge failed to read the by-law to the jury; the instruction being more favorable to defendant than it was entitled to.

5. EVIDENCE—SELF-SERVING STATEMENTS—HEARSAY.

A conversation between defendant's representative and the station agent, in the absence of plaintiffs, offered for the purpose of showing that said representative stated that in ordering a car she was acting as agent of plaintiffs, *held*, inadmissible as self-serving and hearsay.

BIRD, J., dissenting.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted June 17, 1921. (Docket No. 90.) Decided October 7, 1921.

Assumpsit by Lee Harley and another against the Hartford Fruit Growers & Farmers Exchange for goods sold and delivered. Judgment for plaintiffs. Defendant brings error. Affirmed.

*W. J. Barnard,* for appellant.

*Glenn E. Warner* and *Thomas J. Cavanaugh,* for appellees.

BIRD, J. (*dissenting*). Plaintiffs claim they sold

710 bushels of Duchess apples to defendant in August, 1919, at $2.25 a bushel, and delivered the same to the defendant in a railroad car at Hartford. That afterwards they received $400 on account thereof, leaving a balance of $1,197.50. They sue to recover this balance.

The defendant is said to be a corporation. Its method of operation is to receive, pack and sell the fruit of its members and at the end of the season it deducts 5 per cent. of the gross income for services and prorates the balance among its members. Growers of fruit, who are not members, may put their fruit through the exchange, but they are charged 10 per cent. on gross receipts. Neither one of the plaintiffs was a member of the exchange. The exchange is managed by Miss Conway and it is defendant's contention that it never purchased plaintiffs' apples, but that Miss Conway assisted plaintiffs and acted as their agent in making sale of them. This was the only issue tried out. The jury accepted plaintiffs' version and gave them a verdict for the full amount of their claim plus the interest thereon.

1. Defendant requested a directed verdict because its charter and by-laws did not permit it to purchase fruit outright that had not been run through and packed in its warehouse. Nowhere in the record or briefs are we able to find what its charter is and no reference is given to the number or year of the act under which it was incorporated. There was no proof which would permit us to say, as a matter of law, that plaintiffs had knowledge of the by-law referred to by counsel. For these reasons we shall decline to consider this assignment.

2. Upon direct-examination of the plaintiff he was asked if he knew of circumstances where the defendant had purchased fruit outright of people who were not members of the exchange. He replied that he

had known of such instances. Upon cross-examination he was asked to name one person who was not a member from whom defendant had purchased fruit outright, which had not been run through the warehouse, and he named a Mr. Doyle. Defendant then sent out and got Mr. Doyle, but the trial court would not permit him to contradict plaintiff on that question on the ground that it was a collateral question. We are unable to agree that the testimony was collateral. One of the hardest urged defenses was that the company lacked the power to purchase fruit outright, where it had been packed in the orchard, as plaintiffs' had been packed. Plaintiffs' counsel undertook, by his question to his client, to show, as a matter of practice, that defendant had done so, thereby opening the way to sail around defendant's objection that it had no power to do it, and had not done it. The testimony was admissible as it went directly to one of the vital contentions of defendant and should have been admitted.

3. Defendant offered in evidence one of its by-laws, as follows:

"All fruits sold by the association, except small fruits, such as cherries, berries, and grapes, shall be packed in the company's warehouse."

This by-law was competent as tending to show the manner in which the business of defendant was conducted and bore upon the question of Miss Conway's authority to purchase them. If, after showing this, it could have been brought home to the knowledge of the plaintiffs it would have charged them with notice that Miss Conway had no authority to purchase the apples outright without being run through defendant's warehouse. *Hallenbeck* v. *Casket Co.*, 117 Mich. 680; *Rundell* v. *Elevator Co.*, 210 Mich. 642.

4. Miss Conway, the manager, testified she took a buyer by the name of Hinds to plaintiff, and that he

and plaintiff made an arrangement whereby Hinds was to sell the apples, and that plaintiff, who was sick at the time, instructed them to go to the station and order a car for him. Upon cross-examination of the station agent, the trial court would not permit him to state whether Miss Conway stated for whom she was ordering it. We think it was material and admissible for the purpose of showing that Miss Conway carried out the orders of the plaintiff. He had constituted her as his agent to order the car and it was important to know whether she ordered it for him or for the defendant. It bore directly on the good faith of the claim plaintiffs were making that they sold the apples outright to defendant.

5. The question is raised that the claimed agreement between plaintiffs and the defendant was void because within the statute of frauds. This point is not well taken because the contract from plaintiffs' standpoint was an executed one.

Many other errors are assigned. They have been examined, but we do not find any reversible error in them. For the errors pointed out the judgment should be reversed and a new trial granted. Defendant should recover its costs of this court.

FELLOWS, J. I do not agree with Justice BIRD that this case should be reversed. Taking up first the question considered under the second heading of his opinion, involving the rejection of the testimony of Mr. Doyle: The record does not disclose that the contract, if made as claimed by plaintiffs, was *ultra vires* of the corporation. Mr. Justice BIRD so concludes in what he says under 1, and in this I agree. The question of *ultra vires* was not in my judgment involved in the case. The issue was single and was squarely this: "Did defendant purchase plaintiffs' apples?" Such being the issue it was unimportant and a col-

lateral matter whether defendant purchased apples of Mr. Doyle or any one else, or whether it had ever made such a contract as is here involved before or since the transaction in question. Plaintiff was not asked in his original examination whether he knew of the purchase of fruit outright from nonmembers of the exchange. It was only after a grueling cross-examination by defendant's counsel that plaintiffs' counsel on redirect-examination asked him about this and then for the purpose of clearing up the cross-examination. Defendant's counsel again took him up on further cross-examination and asked him to name one person and he named Mr. Doyle. This was purely a collateral matter and counsel was bound by his answer. *People* v. *Williams*, 159 Mich. 518; *People* v. *Lipsczinska*, 212 Mich. 484.

I do not construe the by-law quoted by my Brother as affecting in any way the dealings of the company or its right to deal with outsiders. This was a by-law adopted for the regulation of its members and no doubt they were bound by it. But plaintiff was not a member. Such fruit as was sold by the association for its members was to be packed in the company's warehouse; but I do not think this prohibited the company from buying apples packed or unpacked. But, be that as it may, my Brother places his opinion on the basis that it was proper to prove the by-law *first* and then introduce evidence showing that it was brought home to plaintiff. One difficulty I find in following my Brother in this is that Miss Conway did not claim that she showed plaintiff Harley this by-law; in fact, she says she did not. What she claimed was that she told him the by-laws would not permit them to handle fruit through the exchange that was packed in the orchards. Plaintiff denied that she told him any such thing. The trial judge accepted the construction of the by-laws contended for

by defendant's counsel—that it prohibited the purchase of fruit from outsiders as this transaction was conducted—and charged the jury that if Miss Conway did so inform the plaintiff he could not recover. This was repeated several times during the charge from which I now quote:

"And if you find from the evidence in this case that the witness, Miss Conway, called the attention of the plaintiff Harley, in their negotiations at the time these apples were purchased, and informed him at said time that she could not purchase his apples if packed by him, under the rules of the corporation, then I charge you that plaintiff had notice of such authority and he could not recover in this case.

"You will remember that it is the claim of Miss Conway that she told him she could under no circumstances purchase apples that were packed outside of their packing house, and unless they went through their packing house. It is the claim of the plaintiff that no such talk was had at all and that he had no knowledge of that fact. Now, if you find that she did say that to him, then, under the law, he would be placed on his guard to know exactly what her authority was; and in this case the court charges you that if she did inform him of that fact the plaintiff cannot recover."

The charge was much more favorable to defendant than it was entitled to. The jury by their verdict have found that plaintiff did not have notice or knowledge of the by-law. It was, therefore, under these circumstances unimportant that its exact language was not read to the jury. The substance of it was testified to. And all that Miss Conway claimed was that she told plaintiff Harley what its substance was. This he denied, and the jury believed him. It is therefore unimportant what construction should be put upon it.

Defendant sought to prove a conversation between the station agent and Miss Conway which took place when neither of the plaintiffs was present and offered

to prove what Miss Conway then told the agent in the absence of plaintiffs. This was a self-serving statement, hearsay pure and simple, and the trial judge did not err in excluding it.

I am unable to find any reversible error in the case. I think the judgment should be affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, and SHARPE, JJ., concurred with FELLOWS, J.