PEOPLE v. CONNELLY.

HOMICIDE—EVIDENCE—CHARACTER.

> Testimony of the respondent's immoral character before marriage is not competent, upon a prosecution for murder, to rebut her testimony, elicited upon cross-examination, that she led a virtuous life prior to her marriage, as she alone could put her character for chastity in issue. HOOKER, GRANT, and MONTGOMERY, JJ., dissenting.

Error to the superior court of Grand Rapids; Stuart, J. Submitted May 8, 1908. (Docket No. 131.) Reargued October 6, 1908. (Docket No. 1.) Decided July 6, 1909.

Clara Connelly was convicted of manslaughter, and sentenced to imprisonment for not less than two nor more than fifteen years in the Detroit house of correction. Reversed.

*A. A. & H. A. Ellis* and *Bert Hayes*, for appellant.

*John E. Bird*, Attorney General, *John W. Powers*, Prosecuting Attorney, and *Colin P. Campbell*, Assistant Prosecuting Attorney, for the people.

McALVAY, J. From a conviction of manslaughter respondent seeks a reversal upon several alleged errors, but one of which is considered necessary to discuss. The altercation, during which the shooting which resulted in death occurred, commenced by an unjustifiable assault by deceased upon respondent, his wife. She claimed that he knocked her down twice, and that she crawled on her hands and knees to her bed, where she got a revolver, and, when he violently assaulted her again, she was put in fear of great bodily injury, and shot in self-defense. There was evidence besides her testimony which raised

an issue of fact as to whether or not the shooting was justifiable. In the submission of this question to the jury, an examination of the record satisfies us that no error was committed.

The details of the lives these people had led since a short time after their marriage are of such a character that in this opinion they are omitted as much as possible. Her testimony shows that at her husband's solicitation she received men who were procured by him, and that both were supported from the proceeds of such traffic. She claims that, having been seriously sick for several days and still in that condition, her refusal to receive a man procured by her husband was the real cause of their last quarrel.

On rebuttal by the prosecution, the court, over the objection of respondent's counsel, admitted the testimony of several witnesses tending to prove that respondent was a common prostitute before her marriage to Connelly. It was admitted by the court, as is claimed on behalf of the people, to meet respondent's claim that prior to such marriage she had led a virtuous life. The record does not show that on direct examination she made any such claim. On cross-examination, in answer to questions propounded by the prosecutor, and which were objected to by her counsel, she did so testify. This testimony, which was brought out by the prosecution, is made the basis for the introduction of the testimony of these witnesses to contradict her. The testimony objected to, if not admissible upon the ground claimed for it, was not material to the issue. As already stated, it was admitted upon a false assumption as to what respondent's direct examination contained, and for the purpose of contradicting it. Respondent had not made her character for chastity before her marriage to Connelly an issue in the case. The rule in this criminal prosecution is that she alone could make that issue. To allow the prosecutor to make it by improper cross-examination would abrogate the well-settled rule above stated. We conclude that both the cross-examination above referred to, and the testimony of

the witnesses introduced to contradict such cross-examination, were improperly admitted. This testimony was prejudicial to respondent, and could have been offered for no other purpose. The court was in error in not sustaining respondent's objections to all this testimony.

There are some minor propositions which do not require consideration. Upon a new trial they will doubtless be avoided.

For the error pointed out, the conviction and judgment are reversed and set aside, and a new trial is ordered.

BLAIR, C. J., and OSTRANDER and MOORE, JJ., concurred with McALVAY, J.

HOOKER, J. (*dissenting*). The defendant was convicted of manslaughter upon an information charging murder. The testimony offered on behalf of the prosecution showed that the defendant and her husband engaged in a quarrel, and that he had knocked her down; that she lay there groaning, and said that, "when she should get up, she would fix him;" that she soon got up and went to the bed and procured a revolver. He turned around, apparently to see what defendant was doing, and the witness, "seeing them stand close together, and (as she stated) knowing that there was going to be something doing, was just going to run out of the door, when she heard a shot fired, and when she got nearly a block off she heard two more." Death of the husband soon followed from the effect of the shots.

The defendant testified on her own behalf, claiming provocation and shooting in self-defense. Her counsel saw fit to introduce, through her testimony, evidence that the defendant's husband had induced her to engage in prostitution to support them; that, of course, she did not want to do this, but, after discussing it two or three days, she consented, and apparently she continued the practice up to the time of the shooting. On cross-examination she practically admitted being arrested and fined as a prostitute in Jackson, but denied many questions designed

to show that she was a common prostitute before her marriage to the deceased, among other testimony, evidence that she kept a house of bad repute while she lived with a former husband, who secured a divorce from her. The prosecution admitted that this testimony was admissible only to meet defendant's claim that she was a moral woman until corrupted by her husband's influence. On cross-examination she was interrogated at length upon her conduct, and with regard to having and threatening her husband and other people with a revolver, and denied having a revolver or doing so. Much of this testimony came in without exception. Moreover, the whole subject was introduced without its having any close connection with the altercation, which apparently arose over the breaking of the whisky bottle. Counsel evidently thought it was important and competent testimony for the defendant, and, if so, it was proper to show that the claim that deceased was responsible for her immorality was untrue.

Counsel allege error upon the prosecutor's refusal to examine a witness who was subpœnaed at defendant's request. No exception was taken to the refusal. The prosecutor produced the witness, who was fully examined by counsel for defendant. She was not present at the shooting, though she heard some of the quarrel and testified to it. The defendant was not injured, even if the prosecutor should have been required to do more than to produce the witness, which we do not decide.

As to remarks of the prosecuting attorney, they will compare favorably with those of defendant's counsel, and do not call for a reversal of the case.

Counsel contend that the learned judge of the superior court omitted necessary instructions relating to justifiable or excusable homicide. We think otherwise. After instructing the jury regarding murder and manslaughter, he discussed at some length counsel's claim of self-defense, and he used this language:

"It must appear that the circumstances were sufficient to excite the fears of a reasonable man or woman, under

the circumstances in the case, and that she acted under the influence of those fears. But, if you find that the respondent honestly believed, at the time that she fired this shot, that Sweeney intended to assault her and do her grievous harm, or that her life was in danger at that moment, and, acting under that belief as the circumstances appeared to her, fired the shot which killed the deceased, then it would not be murder, but justifiable or excusable homicide.

"And it is not a question in this case whether Sweeney ought to have been killed on general principles or not. But did the respondent honestly believe, at the time she fired the shot, that he fully intended to kill her or do her great bodily harm, and was in a position to do it, and, if you find that she did so honestly believe, and acted under that belief, then it would be justifiable homicide. You must take the facts and circumstances as they appeared to her.

" I have a request on that point, on the part of the defendant, that I will give: 'The danger or apparent danger is that that appeared to the defendant at the time, and not the danger or lack of danger that might appear to one afterwards. She was to be the judge, and all that the law required of her was to act honestly. And, if you find she honestly believed that she was in danger of great bodily harm or death, she had a right to protect herself, and, if it was necessary for that purpose to resort to the use of the revolver, if she honestly believed at that time that she was in danger of death or other bodily harm, she had a right to do so.' "

This was quite as broad a statement of the rule as defendant was entitled to. We think that he also made all necessary explanation of the subject.

We are asked to reverse the cause for the reason that the trial judge neglected and refused to charge the jury that there was no evidence of murder. Counsel do not point out such a request or a refusal, and, if there was such, we do not find it. We do find, however, that assignment of error No. 40, under which the statement in the brief is made, omits to claim the refusal of such a request. The brief is therefore misleading, and has compelled a search to ascertain the true situation. We point

it out because statements of that degree of inaccuracy inevitably make much unnecessary labor unless relied upon without question, in which case they may easily lead to improper reversal. An unreliable brief should have no place in a court of justice, and care should be taken to avoid such mistakes as that pointed out. The defendant was convicted of manslaughter, and might, under the testimony, have been convicted of murder in the second degree if not the first. She has no reason for complaint upon the ground mentioned.

Complaint is made of the statement that, when a homicide is committed by the use of a dangerous weapon, malicious intent may be presumed. With the qualification which accompanied the statement made, there was no error.

We have found no error in the record, and the conviction should be affirmed.

GRANT and MONTGOMERY, JJ., concurred with HOOKER, J.