PEOPLE v. WILLIAMS.

1. EVIDENCE — COLLATERAL ISSUES — CROSS-EXAMINATION — IM-
PEACHMENT.
    The prosecution is bound by the respondent's testimony on
    cross-examination relating to collateral matters, and cannot
    impeach him by showing that statements made by him re-
    lating to a distinct prosecution of a third person and not
    connected with the offense with which he was charged, were
    false.

2. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.
    Facts of which the prosecuting attorney has personal knowl-
    edge should be presented to the jury by him as a witness,
    and not in his argument.

Exceptions before judgment from Hillsdale; Chester,
J. Submitted November 12, 1909. (Docket No. 161.)
Decided February 3, 1910.

Dennis Williams was convicted of larceny. Reversed.

*Frank H. Hall* and *Grant Fellows*, for appellant.
*Paul W. Chase*, Prosecuting Attorney, for the people.

MOORE, J. The respondent was convicted of the
charge of larceny. He brings the case to this court
on exceptions before judgment. It is claimed the lar-
ceny was from the person of Mr. Dillon; that he had on his
person $75 in bills in the inside vest pocket. Towards
evening he was in Boyd's saloon and claims he met one
Clare Buck, who invited him to take a drink, which he
declined; that he then went into a room off the bar-
room, called in the record a "wineroom;" that Buck
came in and swung his arms around his neck and ab-
stracted the roll of bills from his pocket; that he grap-
pled with him and called, "Thief" and "Robber;" that

soon after Buck was searched, and no money was found upon him. It is the claim of the people that the money was passed by Buck to one Vreeland before the search, and that there was a conspiracy between the respondent, Buck, and Vreeland to obtain the money and divide it between them.

Nearly all the testimony incriminating the respondent was given by Buck, who had pleaded guilty. Respondent contradicted the testimony of Buck and denied all connection with the robbery. Respondent, for the purpose of affecting the credit of Buck, introduced testimony of his neighbors, who testified, in substance, that they were neighbors of Buck, had the means of knowing his general reputation in that neighborhood for truth and veracity, and that it was bad. The people, for the purpose of impeaching respondent, were permitted to ask respondent, on cross-examination, if he did not on one occasion come to the officers and tell them that William Boyd kept prostitutes at his place and rented rooms to any one that wanted them. Upon his testifying that he was intoxicated on that occasion and did not remember what he told the officers, it was permitted of the people to show by one of the officers present that he was not intoxicated on that occasion, and that he did tell the officers that Boyd kept a house of prostitution and rented rooms for that purpose. The people were also permitted to read to the jury a complaint made by respondent charging Mr. Boyd and one Wilson with keeping a house of prostitution, and then to prove what respondent testified to on the examination of Boyd and Wilson on that charge. The admission of this testimony is assigned as error.

An examination of the record shows that the respondent was called as a witness in the examination of Boyd and Wilson. He was then asked the following question:

"*Q.* And isn't it a fact that you went back absolutely and under oath in justice court on what you had told the officers at the time you came to see them concerning William Boyd and his house of ill fame?"

This was objected to, but the objection was overruled. The respondent answered.

"I don't remember now what I told them. I was sworn in justice court. I had been drinking on the day I made the complaint. I don't know what happened that night."

The witness was then asked the following question:

"Q. Isn't it a fact, Mr. Williams, at the time you called to see the officers concerning William Boyd's place, that you told the officers that William Boyd rented these rooms to any one that wanted them?

"A. I say I don't remember what I said at that time. I will not swear that I didn't say so. I did swear on the examination that I never knew him to rent rooms."

The sheriff, who had been previously sworn, was recalled in rebuttal, and testified that he had heard the testimony above referred to, and was asked the following question: "Q. What was his condition at the time he made that complaint?" This was objected to for the reason that the respondent had been interrogated about it, that it was a collateral matter, and that the people were bound by the answer. The objection was overruled, and Mr. Eggleston answered:

"He had been drinking, but he wasn't drunk. He knew everything that he was doing and walked off straight. * * * He said he kept a house of ill fame, and he wanted to make a complaint. He said they kept rooms to rent, and he took the money for it, and named different girls that stayed there for the purpose of prostitution. He named the girls and told that they were staying there pretending to be working, but there wasn't any of them working there. They came there for that purpose."

The people were also permitted to read to the jury the complaint made by respondent against Boyd and Wilson and to interrogate him with reference to the testimony given by him on the preliminary hearing in that case. The people were also permitted to interrogate the respondent as to what he swore to on the preliminary examination of Boyd and Wilson, and then to show by the sheriff that in

a prior conversation he had made a statement contradictory to this testimony.

It is clear that the conversation with the sheriff in relation to another case could not be treated as an admission in this case, but related to an entirely different matter. In 1 Greenleaf on Evidence (15th Ed.), § 461, the following appears:

" (2) By general evidence affecting his credibility for veracity. But in impeaching the credit of a witness, the examination must be confined to his general reputation, and not be permitted as to particular facts, for every man is supposed to be capable of supporting the one, but it is not likely that he should be prepared to answer the other without notice; and unless his general character and behavior be in issue he has no notice. This point has been much discussed, but now may be considered at rest."

In a footnote to the above section, we find the following:

"The mischief of raising collateral issues is also adverted to as one of the reasons for this rule. ' Look ye,' said Holt, Ld. C. J., 'you may bring witnesses to give an account of the general tenor of the witness's conversation; but you do not think, sure, that we will try, at this time, whether he be guilty of robbery.' *Rex* v. *Rookwood*, 13 How. St. Tr. 211."

See *Driscoll* v. *People*, 47 Mich. 413 (11 N. W. 221); *McDonald* v. *McDonald*, 67 Mich. 122 (34 N. W. 276); *People* v. *Connelly*, 157 Mich. 260 (122 N. W. 80). When the prosecuting attorney asked the respondent what conversation he had with the officer with reference to the collateral matter of a complaint against Boyd and Wilson, the prosecuting attorney was bound by his answer and had no right to assail his credibility by proof of a different statement from him on this collateral matter.

Error is assigned upon the argument of the prosecuting attorney. Some of this assignment was based upon the testimony which we have already stated was inadmissible. A repetition of this portion of the argument is not likely to occur again.

Error is assigned upon the following portions of the prosecuting attorney's argument:

"And I don't know, gentlemen of the jury, but what it is pretty near as near a credit to a man to be an inmate of Jackson State prison as it is to be an inmate to Bill Boyd's saloon. There isn't much difference. * * * There isn't much difference. And, understand, I am not asking a conviction here because Dennis Williams tended bar; I am not asking that. He could tend bar and be all right. I am not asking a conviction on that ground. But I say to you that the way Bill Boyd's place has been pictured out, it is one of the worst hell holes in Hillsdale county, and I say that Jackson State prison couldn't be a greater blot upon a boy's character than it does to be found in that resort for thieves and prostitutes. * * * Talk about putting a blot upon a young man's character, blot Dennis Williams? He is so covered with blots from his crooked deeds and his morals you couldn't find a white place on him."

The rule has been repeatedly stated that, if the prosecutor desires to get facts before the jury of which he has knowledge, they should be presented by him as a witness, and not by way of argument. As the case is to be reversed for the reason already stated, it is not necessary to decide whether the above argument of itself would be ground for reversible error. It will be very easy to avoid a like question in the new trial.

The conviction is reversed, and a new trial ordered.

OSTRANDER, HOOKER, BROOKE, and BLAIR, JJ., concurred.