PEOPLE v DAWSEY

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—RIGHT OF CONFRONTATION—CROSS-EXAMI-
NATION—RAPE—PRIOR SEXUAL EXPERIENCE—STATUTE.

Legislative or judicial attempts to prevent meaningful cross-ex-
amination by a criminal defendant are constitutionally unac-
ceptable; however, a trial court's obedience, in a criminal
sexual conduct case, to a statute which limits a defendant's
ability to cross-examine a complaining witness about her prior
sexual experience did not result in a significant impairment of
the defendant's cross-examination of the complainant (US
Const, Am VI, MCLA 750.520j; MSA 28.788[10]).

2. EVIDENCE—MODERN CODES OF EVIDENCE—IMPEACHMENT—UN-
CHASTE CONDUCT.

Modern codes of evidence allocate no place among the methods of
impeachment for cross-examination about unchaste conduct;
insight into the sexual mores of a witness is rarely a help to a
jury in determining if the witness is disposed towards untruth-
fulness.

3. EVIDENCE—CRIMINAL SEXUAL CONDUCT—COMPLAINING WITNESS—
CONSENT.

Evidence indicating that a complaining witness in a defendant's
trial on charges of criminal sexual conduct is a person of
indiscriminate promiscuity may tend to prove her consent to
sex on a particular occasion, however, such evidence of a
complainant's willingness to engage in sex with certain part-
ners does not make it more likely that she consented in the
incident for which the defendant stands charged.

REFERENCES FOR POINTS IN HEADNOTES

[1, 10, 13, 14, 16] 65 Am Jur 2d, Rape § 85.
[2, 4] 65 Am Jur 2d, Rape §§ 82–85.
[3, 9, 11, 12] 65 Am Jur 2d, Rape §§ 83, 120.
[5] 65 Am Jur 2d, Rape §§ 1–14.
[6] 16 Am Jur 2d, Constitutional Law § 574.
[7, 8] 29 Am Jur 2d, Evidence §§ 249, 251–257, 267.
[15] 81 Am Jur 2d, Witnesses § 507.

4. Rape—Constitutional Law—Criminal Sexual Conduct—Cross-Examination—Sexual History of Complainant—Statutes.

There is no basis for holding unconstitutional a statute which limits the ability of a defendant on trial on a charge of criminal sexual conduct to present evidence of a complaining witness's prior sexual activity where the defendant only complains of his inability to attack the complainant's veracity with cross-examination about her sexual history and the defendant did not attempt at trial to produce witnesses to testify about the complainant's reputation for chastity (MCLA 750.520j; MSA 28.788[10]).

Partial Dissent by N. J. Kaufman, J.

5. Constitutional Law—Standing—Criminal Sexual Conduct—Force—Statutes.

Standing is required before a constitutional attack may be raised against a statute; a defendant charged with and convicted of criminal sexual conduct in the first degree does not have standing to challenge as unconstitutionally vague that portion of the criminal sexual conduct statute which allegedly omits the essential element of force or lack of force where the issue of force was placed before the trier of fact, and the trial judge's decision reflected the judge's view that the statute required a finding of force or the threat of force to sustain the conviction.

6. Constitutional Law—Fundamental Right—Cross-Examination.

*The right of a criminal defendant to cross-examine a witness has been held to be a fundamental right.*

7. Evidence—Relevancy—Logical Relevancy—Legal Relevancy.

*Evidential relevancy has been defined as that evidence which is helpful in throwing light upon any material point in issue; however, the fact that a piece of evidence is logically relevant to a material point in issue does not necessarily mean it is legally relevant to that issue.*

8. Evidence—Relevancy—Constitutional Rights.

*A statutory declaration that certain evidence can never be legally relevant demands close scrutiny where a constitutional right is involved.*

9. Evidence—Relevancy—Discretion—Criminal Sexual Conduct—Complaining Witness—Prior Sexual Conduct—Credibility.

*The general rule that trial courts may decide the issues of the.*

*relevancy of proffered evidence in the exercise of their discretion should be applied to the admission of evidence regarding a complaining witness's prior sexual conduct which is being offered as bearing on the complainant's credibility in a case involving charges of criminal sexual conduct, subject to reasonable provisions effectuating the state's interest in encouraging rape victims to come forward.*

10. EVIDENCE—CROSS-EXAMINATION—RESTRICTIONS ON CROSS-EXAMINATION—COMPLAINING WITNESS—CONSTITUTIONAL LAW—STATE INTEREST.

*Constitutionally valid restrictions can be placed on a defendant's right of cross-examination of a complaining witness at a defendant's trial on a charge of criminal sexual conduct in order to protect a state's legitimate interest; however, the statute should be narrowly drawn so that its provisions do not exceed that which is necessary to protect the state's interest.*

11. RAPE—EVIDENCE—CONSENT—PRIOR SEXUAL CONDUCT—PROBATIVE EVIDENCE—DISCRETION OF COURT.

*The present criminal sexual conduct statute is unconstitutional because it potentially forbids the admission of evidence relevant to the issue of consent; a statute restricting the admission of such evidence must not be so inflexible that even evidence which is exceedingly probative and critical to a defendant's case cannot be admitted at the discretion of the trial court.*

12. CONSTITUTIONAL LAW—DUE PROCESS—CRIMINAL LAW—PROBATIVE EVIDENCE—EXCLUSION OF EVIDENCE—APPEAL AND ERROR.

*The right of an accused to present a defense, in addition to taking the stand in his own behalf, is a fundamental element of due process of law; a due process violation would occur where there are even imaginable situations where evidence of sexual behavior with third persons is even arguably probative of consent and that evidence is excluded from trial by statute.*

13. EVIDENCE—CRIMINAL SEXUAL CONDUCT—PRIOR SEXUAL ACTIVITY—COMPLAINING WITNESS—CROSS-EXAMINATION.

*A defendant who was convicted of criminal sexual conduct in the first degree and who was denied the opportunity to offer evidence of the prior sexual activity of the complaining witness through cross-examination should be afforded this opportunity by a remand to the trial court where an in camera hearing may be held at which time the defendant may offer the cross-examination he sought to ask, and upon hearing the proffered evidence the trial court would rule on its admissibility in light*

*of the standards set forth in precedent cases on the subject; if the evidence is ruled inadmissible, the conviction should be affirmed and if ruled admissible, a new trial should be ordered.*

14. RAPE—EVIDENCE—PRIOR SEXUAL CONDUCT—ADMISSIBILITY—BURDEN OF PROOF.

   *Evidence of specific acts of sexual activity by the complaining witness with other parties is inadmissible as a general rule in a criminal sexual conduct prosecution; it is incumbent upon the defendant to strongly tie up the proffered evidence to the particular facts of the case before such evidence could be admitted.*

15. WITNESSES—HARASSMENT—DUTY—COURTS.

   *A trial court has a duty to protect witnesses from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate.*

16. CONSTITUTIONAL LAW—CRIMINAL SEXUAL CONDUCT—CROSS-EXAMINATION—CONFRONTATION—STATUTES.

   *The provision of the criminal sexual conduct code which prohibits a defendant from cross-examining a complaining witness regarding her prior sexual conduct is unconstitutional because it violates a defendant's rights of cross-examination and confrontation; the other provisions of the statute are not affected because this evidentiary provision can be severed from the rest of the statute (MCLA 750.520a et seq.; MSA 28.788[1] et seq.).*

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted December 16, 1976, at Detroit. (Docket No. 27675.) Decided July 18, 1977.

William H. Dawsey was convicted of first-degree criminal sexual conduct. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*George Stone,* for defendant on appeal.

Before: R. M. MAHER, P. J., and V. J. BRENNAN
and N. J. KAUFMAN, JJ.

R. M. MAHER, P. J. Judge KAUFMAN's opinion
deals adequately with all but one of the issues
defendant raises in his appeal from his conviction
for first-degree criminal sexual conduct, MCLA
750.520b(1)(e); MSA 28.788(2)(1)(e). Unlike Judge
KAUFMAN, I cannot conclude that the court below
committed reversible error when it limited cross-
examination of the complainant under MCLA
750.520j; MSA 28.788(10).

At defendant's trial, his counsel was able to
elicit from the complainant that an act of sexual
intercourse was not something new to her. An
objection from the prosecutor, sustained by the
court, terminated that line of questioning. The
court, although expressing serious doubts about
"any statute that eliminates for the trier of the
fact * * * the credibility of the parties involved",
correctly ruled the questioning of the complainant
about her prior sexual activity with persons other
than defendant was prohibited under MCLA
750.520j; MSA 28.788(10). Defense counsel regis-
tered his objection to the prohibition against in-
quiry into the complainant's prior sexual activity.

The challenged statutory provision reads:

"(1) Evidence of specific instances of the victim's
sexual conduct, opinion evidence of the victim's sexual
conduct, and reputation evidence of the victim's sexual
conduct shall not be admitted under sections 520b to
520g unless and only to the extent that the judge finds
that the following proposed evidence is material to a
fact at issue in the case and that its inflammatory or
prejudicial nature does not outweigh its probative
value:
    (a) Evidence of the victim's past sexual conduct with
the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)."

Since defense counsel did not attempt to offer either opinion or reputation evidence of the complainant's sexual conduct, only the restriction on evidence of specific instances of the complainant's sexual conduct is at issue in this appeal. Defendant contends that the statutory restriction on evidence of complainant's sexual activity denied him his constitutional right of confrontation. Quoting his brief, "[d]isallowing cross-examination destroyed one of defendant's most effective means of attacking her veracity".

A legislative prohibition against evidence of a certain class, even for the worthy purpose of preventing witnesses from suffering embarrassment on the stand, may not limit the Sixth Amendment right to confrontation guaranteed all defendants. *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). In *Davis,* a key prosecution witness may have been under pressure to fabricate because of his juvenile probationary status, but an Alaska statute prevented defense cross-examination about that status. The Supreme Court held that following this statutory restriction on cross-

examination produced an error of constitutional magnitude.

"In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." 415 US at 319.

Similarly strong is language in *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297, 309 (1973):

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' *Dutton v Evans*, 400 US 74, 89 [91 S Ct 210; 27 L Ed 2d 213] (1970); *Bruton v United States*, 391 US 123, 135–137 [88 S Ct 1620; 20 L Ed 2d 476] (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal'. *Pointer v Texas*, 380 US 400, 405 [85 S Ct 1065; 13 L Ed 2d 923] (1965)."

*Davis* and *Chambers* are clear; legislative or judicial attempts to prevent meaningful cross-examination are constitutionally unacceptable. I cannot see, however, how the trial court's obedience to the statute impaired in any significant way defendant's cross-examination of the complainant. Defendant's inability to explore the complainant's sexual past, in order to "attack her veracity", was inconsequential.

An early Michigan case, reviewing a conviction for statutory rape, upheld the exclusion of cross-

examination about chastity. "Lack of chastity cannot be used to impeach the credibility of a female witness." *People v Mills,* 94 Mich 630, 637–638; 54 NW 488 (1893). See also, *People v Connelly,* 157 Mich 260; 122 NW 80 (1909). Not long afterwards, however, the Supreme Court held that it was in the discretion of the trial court to allow a defendant in a murder trial to be cross-examined about her chastity. *People v Cutler,* 197 Mich 6; 163 NW 493 (1917). *People v Mills, supra,* was criticized as being inconsistent with many Michigan decisions, both criminal and civil, that authorized the questioning of a female witness about her chastity.

Recent decisions, in upholding the *restriction* of cross-examination of a rape complainant about her chastity, emphasize the discretion left to the trial court. *People v Whitfield,* 58 Mich App 585; 228 NW2d 475 (1975), *People v Sturgis,* 35 Mich App 380; 192 NW2d 618 (1971), *People v Weems,* 19 Mich App 553; 172 NW2d 865 (1969). These cases indicate a proper skepticism for the view that sexual activity can be equated with moral character and thus with testimonial reliability.

In *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973), the Supreme Court had little tolerance for the prosecutor who cross-examined defendant's alibi witnesses about their lesbian relationship:

"It [the cross-examination] did no more than put in front of the jury the fact that he, the prosecutor, *personally* felt these witnesses to be of disreputable character and unworthy of belief." 390 Mich at 686.

The inability to impeach a witness by showing a lack of chastity was at one time a minority position, although a strong one. Anno: *Cross-examination as to sexual morality for purpose of affecting credibility of witness,* 65 ALR 410. Modern codes

of evidence allocate no place among the methods of impeachment for cross-examination about unchaste conduct. *Model Code of Evidence,* rule 106; *Uniform Rules of Evidence,* rule 608; *Federal Rules of Evidence,* rule 608; *Proposed Michigan Rules of Evidence,* rule 608.

Insight into the sexual mores of a witness is rarely a help to a jury in determining if the witness is disposed towards untruthfulness.[1] There is no reason to consider an unchaste witness as mendacious. Dean Ladd observed:

"History contains the names of many highly respected persons whose honor in telling the truth would not be questioned and yet whose sex life would hardly be the model for future generations. The frank novels and biographies of the present day disclose habits of living, not commendable or in conformity with legal and ethical standards, and yet not representative of people whose word under oath would be regarded as bad." Ladd, *Credibility Tests—Current Trends,* 89 U Pa L Rev 166, 181 (1940).

In a very recent opinion, *People v Bouchee,* 400 Mich 233; 253 NW2d 626 (1977), the Supreme Court found prejudicial error in cross-examination of defendant and his wife about the legitimacy of

---

[1] *People v Bastian,* 330 Mich 457; 47 NW2d 692 (1951), *People v Smallwood,* 306 Mich 49; 10 NW2d 303 (1943), and *People v Cowles,* 246 Mich 429; 224 NW 387 (1929), all involved a defendant's ability to discredit a rape complainant's testimony by showing her to be a person obsessed with sex who only imagined a sexual episode with defendnat. In all three cases the charge was statutory rape, where consent was not at issue. The testimony erroneously excluded was offered to buttress admitted testimony from medical experts that "the mind of the girl was so warped by sexual contemplation and desires as to lead her to accept the imagined as real or to fabricate a claimed sexual experience". *People v Cowles,* 246 Mich at 431.

Proof of mental abnormality is an accepted means of impeachment. 3A Wigmore on Evidence (Chadbourn Rev), § 934a; Comment, 59 Yale LJ 1324 (1950). It is different from impeachment by showing a lack of chastity.

their children. "We cannot agree with the apparent assumption of the trial court, and the express holding of the Court of Appeals, that the legitimacy of the Bouchees' four children related to the truthfulness or untruthfulness of the defendant or his wife as witnesses." 400 Mich at 253.

Defendant had no complaint when the trial court, following the statute, stopped a line of questioning that would have produced no answers relevant to the complainant's character for truthfulness.

Since consensual intercourse appears inconsistent with the charge of first-degree criminal sexual conduct, it is appropriate to consider briefly whether the trial court, in following the statute, impermissibly limited defendant from substantiating his version of his encounter with the complainant.

An attack on a rape complainant's character for veracity by cross-examination about her sex life may produce answers that are misused in support of a claim that the sexual conduct under scrutiny was consensual. It is therefore helpful to distinguish between evidence that is offered to demonstrate the complainant's disposition towards untruthfulness and evidence offered to show the improbability of the complainant's story that defendant forced her to engage in sex. In *Harris v Neal,* 153 Mich 57; 116 NW 535 (1908), a civil action brought against the rapist by his victim, the court made this careful distinction. The question under review was whether, in a civil action, evidence of plaintiff's bad reputation for chastity was " 'material as bearing upon the probability of plaintiff's testimony' ".

"In the interest of clearness we think it proper for us

to distinguish the question raised by defendant's contention from certain other questions which often arise. The question is different from the one which arises when a female witness upon cross-examination for the purpose of affecting her credibility is asked questions imputing lack of chastity. While the law in such cases is not thoroughly settled, this much may be safely stated, tht the trial court has authority to exclude such testimony (*Knickerbocker v Worthing,* 138 Mich 224 [101 NW 540 (1904)]) and that the answers of the witness are conclusive. The question before us is also to be distinguished from the question which arises when it is sought to impair the credibility of a witness by proof of reputation. In such a case the proof of reputation is confined to reputation for veracity. *Leonard v Pope,* 27 Mich 145 [1873]; *People v Abbott,* 97 Mich [484] 488 [56 NW 862 (1893)]. The principles governing the admissibility of testimony in the two classes of cases above mentioned have no application to the question before us, and if they had, they would not sustain defendant's contention. The rule invoked by defendant's counsel is a different rule. He invokes the rule applied by this court in *People v Ryno,* 148 Mich 137 [111 NW 740 (1907)]. That was a criminal case wherein respondent was convicted of rape. There we held: 'The bad reputation of a prosecuting witness above the age of consent for chastity prior to the date of the offense charged' was admissible as tending to prove that the intercourse may have been had by consent, and we reversed the judgment because this rule was violated by the trial court." 153 Mich at 58.

As *Harris* indicates, the cases have recognized that not all evidence dealing with a complainant's sexual history is equally valuable when consent becomes an issue at trial. While evidence indicating that the complainant is a person of "indiscriminate promiscuity", Comment, 43 U Chi L Rev 613, 624 (1976), may tend to prove her consent to sex on a particular occasion, a complainant's willingness to engage in sex with certain partners

does not make it more likely that she consented in the incident for which defendant stands charged.

"There are an unspecified number of reasons why the prosecutrix may consent to sexual relations with a third person but refuse defendant. The totality of the circumstances becomes significantly dissimilar so that a continuance of consensual behavior becomes unreliable." *People v Mitchell,* 44 Mich App 679, 690; 205 NW2d 876 (1973), (dissenting opinion of BRONSON, J.) *lv granted,* 395 Mich 752 (1975).

In an early Florida case, *Rice v State,* 35 Fla 236; 17 So 286 (1895), a defendant convicted of rape alleged error in the trial court's refusal to permit the complainant to be cross-examined about prior acts of intercourse. The Florida Supreme Court answered:

"The fact that a woman may have been guilty of illicit intercourse with one man is too slight and uncertain an indication to warrant the conclusion that she would probably be guilty with any other man who sought such favors of her. If she was a woman of general bad reputation for chasitity, or had been guilty of acts of lewdness with the defendant the case would be different. In the first instance the evidence would bear directly upon the question as to whether such a woman would be likely to resist the advances of any man; and, in the second, as to whether, having yielded once to the sexual embraces of the defendant, she would not be likely to yield again to the same person." 35 Fla at 238–239.

The Michigan approach is similar. Citing a case relied on in *Rice, supra,* the Supreme Court wrote in *People v McLean,* 71 Mich 309, 312; 38 NW 917 (1888):

"Evidence that the prosecutrix is a common prosti-

tute, or that her character for chastity is bad, is admissible, and particular acts of unchastity or sexual intercourse with the defendant may be shown; but evidence of such acts with a third person is not admissible. *McDermott v State,* 13 Ohio St 332 [1862]."

While some jurisdictions do permit a defendant to delve indiscriminately into a complainant's sex life, they are the minority. Anno: *Admissibility in rape cases of evidence of previous unchastity, or reputation for unchastity, of prosecutrix,* 140 ALR 364.

"In this country, while the prosecutrix may be questioned as to acts of intercourse with the accused in order to disprove the allegation of force in a rape case, there is doubt as to whether questions as to her intercourse with other men are proper. In numerous cases, it is held that, while the chastity of the prosecutrix is in issue and may be attacked by evidence of her general bad character for chastity, it cannot be assailed by evidence of specific acts of unchastity with other persons than the accused." 4 Jones on Evidence (6 ed), § 25:16, pp 154–155. See also FRE 404; proposed MRE 404.

Defendant did not attempt to produce witnesses to testify about the complainant's reputation for chastity. Had he done so, and been denied, a serious question about the statute's constitutionality would have to be faced. See *Commonwealth v Manning,* — Mass —; 328 NE2d 496 (1975). But here, where defendant only complains of his inability to attack the complainant's veracity with cross-examination about her sexual history, there is no basis for holding the statute unconstitutional.
Affirmed.

V. J. BRENNAN, J., concurred.

N. J. Kaufman, J. *(dissenting in part, concurring in part)*. Defendant was convicted after a bench trial in Detroit Recorder's Court of the offense of criminal sexual conduct in the first degree, MCLA 750.520b(1)(e); MSA 28.788(2)(1)(e). He was subsequently sentenced to a term of from 4 to 15 years in prison and now appeals as of right.

This case confronted the court below with the typical one-on-one confrontation problem in a rape case: whom does the trier of fact believe, the complainant or the defendant?

At trial, the complaining witness testified to the following facts: On June 17, 1975, at about 1 a.m., she was walking home from her girlfriend's house in southwest Detroit. During the journey, a man, identified by her as the defendant, walked up from behind and asked if he might walk with her. She refused, but he continued to walk with her for approximately 10 more minutes.

She further testified that as they walked the man put what she believed to be a knife up to her throat and told her not to scream. Then, she recounted, the man forced her across the street to a park and told her to take off her clothes. She complied out of fear because of her belief that the defendant was armed with a knife. The defendant then forced her to engage in intercourse with him.

Immediately thereafter, the defendant grabbed the complainant by the wrist and told her he was taking her to his house. She stated that as they were heading toward his house they passed a man identified by the defendant as "my brother John".

Further testimony by the complainant disclosed that she was able to convince the defendant that they should go to her house instead. She testified that this offer was made solely out of concern for

her safety and to "psyche out" the defendant in order to get away from him. As they walked, the complainant did not see a knife but, again, felt one on the side of her neck.

The complainant testified further that as they reached her home, she called out to her girlfriend and her girlfriend's stepfather to call the police because she had just been raped. As a result of this action, she escaped from the defendant.

A short time later, the complainant called the police. After giving the police a report, she was taken to Detroit General Hospital for an examination. The examining doctor was of the opinion that she recently had sexual intercourse. He found no evidence of trauma, scratches, bleeding or abrasion on any part of her body, but stated she was emotionally upset.

After the prosecution rested, the defendant responded on the stand to the complainant's accusations. He testified that he was 18 years old and had never been convicted of a criminal offense. He agreed that on the night in question, he walked up to the complainant as he was walking home from a friend's house. They struck up a conversation, he said, and she asked if he wanted to smoke some marijuana. Thereupon, they went to the park across the street, smoked a couple of "joints", kissed a little bit and sexual intercourse ensued. He denied having a knife.

Afterwards, defendant stated that he invited her to his house and during the trip saw his brother coming down the street. He claimed that he did not introduce the girl to his brother because he was unaware of her name.

While on the way, defendant testified, the complainant invited him to her house. As they walked toward her house, a late model Thunderbird pulled

up. The complainant purportedly talked with a
man in the car for about two minutes. Thereupon,
defendant stated, the complainant told the defend-
ant that she had better see him later because the
"dude" in the car knew her boyfriend and it might
get a little rough on both of them. Accordingly, he
left.

After listening to all of the evidence, the trial
judge found defendant guilty and made the follow-
ing findings of facts:

"The Court will now proceed to rule. There is no
question that an act of sexual penetration was commit-
ted in connection with the meaning of the statute that
was recently enacted. The explanation of the defendant
in connection therewith and as to the issue of voluntari-
ness is at best a guarded one.

"The fact that he would meet this young lady at this
hour of the night, that she would voluntarily take him
in the park and allow him sexual pleasures with him
[sic] and that he was going to then go to her home for
additional pleasures without ever even knowing her
name, I find it totally unbelievable. The Court finds
that the act of sexual penetration under Section 520(b)
1, was under subsection E in that the defendant accom-
plished this act upon the person of the complainant
while using a weapon or an article used or fashioned in
a manner to lead the complainant to believe it to be a
weapon and that he thereupon overcame her will in
connection therewith and the Court does find him
guilty of the offense of criminal sexual conduct in the
first degree."

On appeal, defendant propounds three claims of
error. First, it is contended that the portion of the
criminal sexual conduct statute under which de-
fendnat was charged is unconstitutionally vague.
This is so, defendant argues, because the essential
element of force or lack of force is absent from the
statutory language. Second, it is defendant's posi-

tion that MCLA 750.520j; MSA 28.788(10), which
excludes all evidence of prior sexual activity be-
tween the complainant and third parties in rape
cases, is unconstitutional in that it impermissibly
curtails the defendant's right to cross-examine the
complaining witness. Finally, defendant submits
that the prosecutor failed to present sufficient
evidence to find defendant guilty beyond a reason-
able doubt.

In response to defendant's first argument, as a
general rule, Michigan requires standing before a
constitutional attack may be raised against a stat-
ute. See, *e.g.*, *State ex rel Wayne County Prosecut-
ing Attorney v Bernstein,* 57 Mich App 204; 226
NW2d 56 (1974). In this case, the critical fact is
that the issue of force was placed before the trier
of fact, and the trial judge's decision reflected his
view that the statute required a finding of force or
the threat of force to sustain the conviction. Ac-
cordingly, defendant is not in a position to com-
plain of that purported vagueness problem in the
statute.

Defendant's next argument, however, cannot be
so easily disposed of. The statutory provision in
question reads:

"(1) Evidence of specific instances of the victim's
sexual conduct, opinion evidence of the victim's sexual
conduct, and reputation evidence of the victim's sexual
conduct shall not be admitted under sections 520b to
520g unless and only to the extent that the judge finds
that the following proposed evidence is material to a
fact at issue in the case and that its inflammatory or
prejudicial nature does not outweigh its probative
value:

(a) Evidence of the victim's past sexual conduct with
the actor.

(b) Evidence of specific instances of sexual activity

showing the source or origin of semen, pregnancy, or disease.

"(2) If the defendant proposes to offer evidence described in subsection (1) (a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1) (a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)." MCLA 750.520j; MSA 28.788(10).

Prior to consideration of this issue, it appears necessary to determine if this question was properly preserved for appeal. Defense counsel asked the complainant at trial, "[i]s an act of sexual intercourse something new to you?" After she replied in the negative, the prosecutor objected to defense counsel's question based on the previously cited statute. This objection was sustained. Moreover, the trial judge expressed his view that his hands were tied by this statute and he had no discretion in allowing questioning of this sort. Thereafter, the following objection was tendered:

"MR. CROCKETT: *[Defense counsel]:* Well, for the record, I take exception to the Court's ruling prohibiting my inquiring into the complaining witness' previous sexual activity, if any, and I suggest that that statute in that particular regard is unconstitutional. All of that, I do respectfully."

No larger obligation can be placed on the shoulders of a defendant to preserve the issue for appeal.

Turning, then, to the substance of defendant's contention, the majority initially seeks to limit the

inquiry into the constitutionality of the provision
in question by relying on appellate counsel's some-
what inartful language that the forbidden ques-
tioning was designed to test the "veracity" of the
complainant. The majority opinion holds that the
statute's restriction on evidence of specific in-
stances of the complainant's sexual conduct does
not violate defendant's constitutional rights of
cross-examination and confrontation as to veracity,
and by extension, to credibility. Even according
due weight to the presumption of constitutionality
attached to statutes, I cannot subscribe to the
theory of the majority and, accordingly, I dissent
from that conclusion.

Undoubtedly, a serious constitutional question
under the Sixth Amendment is raised by this
provision. As noted above, the majority seeks to
focus only on cross-examination as to veracity.
However, cross-examination as to truth and verac-
ity is so specialized, 2 Wharton's Criminal Evi-
dence, 13th ed, § 472, and so rarely utilized, that it
can be assumed that counsel was using the term
"veracity" interchangeably with "credibility";
thus, I will focus not just on the statute's effect on
impeachment as to veracity but also impeachment
as to credibility. In the same vein, the Supreme
Court in *Giles v Maryland,* 386 US 66; 87 S Ct 793;
17 L Ed 2d 737 (1967), concluded that, in a one-on-
one rape case, the issue of consent turned wholly
on credibility. Thus, far from the majority's nar-
row approach, this case confronts this Court with
the obligation to consider certain other constitu-
tional ramifications of the criminal sexual conduct
code evidentiary provision as it relates to confron-
tation and cross-examination.

It should be emphasized at the outset of our
inquiry that the right of cross-examination has

been held to be a "fundamental" right. In *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973), Mr. Justice Blackmun, speaking for the Supreme Court, wrote:

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' *Dutton v Evans*, 400 US 74, 89 [91 S Ct 210; 27 L Ed 2d 213] (1970); *Bruton v United States*, 391 US 123, 135–137 [88 S Ct 1620; 20 L Ed 2d 476] (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer v Texas*, 380 US 400, 405 [85 S Ct 1065; 13 L Ed 2d 923] (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *E.g., Mancusi v Stubbs*, 408 US 204 [92 S Ct 2308; 33 L Ed 2d 293] (1972). But its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined. *Berger v California*, 393 US 314, 315 [89 S Ct 540; 21 L Ed 2d 508] (1969)."

I recognize that in cases of this type, the state has a "legitimate interest" in encouraging the prosecution of rapists by protecting witnesses from harassment and humiliation on the witness stand. The Legislature is validly concerned with ensuring that complainants are not unnecessarily subjected, and that complainants know they will not be unnecessarily subjected, to the traumatic experience of having their private lives paraded before them in the court room. The question is how to balance the competing interests, *Chambers v Mississippi, supra.*

In *Davis v Alaska*, 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974), the Supreme Court conducted

such a balancing process and held that the state's policy interest in protecting the confidentiality of a juvenile offender's record had to yield when faced with so vital a constitutional right as the effective cross-examination of an adverse witness for bias. The Supreme Court concluded, through Mr. Chief Justice Burger, that the state's desire that the juvenile fulfill his duty to testify free from embarrassment and with his reputation unblemished must fall before the right of the defendant to seek out the truth in the process of defending himself.

The determination that this Court must make, in much the same manner as did the United State Supreme Court in *Davis,* involves two separate but related goals of cross-examination: impeachment of credibility and the substantive establishment of the defense in the case. I will discuss credibility first.

The majority opinion focuses solely on veracity, a subset of the larger category of credibility. The majority contends that "[i]nsight into the sexual mores of a witness is rarely a help to a jury in determining if the witness is disposed towards untruthfulness". Thus, according to the majority, the statute's absolute bar on such evidence should survive constitutional challenge. I cannot agree with that conclusion.

Relevancy in Michigan has been defined as " 'helpful in throwing light upon any *material point in issue'* ". (Emphasis in the original.) *People v Rimson,* 63 Mich App 1, 4; 233 NW2d 867 (1975), citing *People v Becker,* 300 Mich 562, 565; 2 NW2d 503 (1942). Of course, the fact that a piece of evidence is logically relevant to a material point in issue does not necessarily mean it is legally relevant to that issue, *Jarecki v Ford Motor Co,* 65 Mich App 78; 237 NW2d 191 (1975). But where a

constitutional right is involved, a statutory declaration that certain evidence can *never* be legally
relevant demands close scrutiny.[1] As the credibility of the complainant is always in issue, I submit
that there are instances when specific evidence of
sexual conduct does bear on the complainant's
credibility. In *People v Bastian,* 330 Mich 457, 460;
47 NW2d 692 (1951), the Supreme Court held
evidence as to the specific sexual habits of the
complainant admissible to show that the prosecutrix was a sexual-psychopath, a condition that one
physician in the case testified rendered her credibility "very poor". The trial court had ruled that
the defense could not cross-examine as to "certain
alleged conduct on her part tending to show, as it
is claimed, that she was a sexual-psychopathic
person and indulged in acts of perversion", 330
Mich at 462. The Supreme Court concluded:

"It is the claim of the defendant that the rulings of
the trial court were erroneous, and that they were
prejudicial to his rights. Emphasis is placed on the fact
that the case against defendant rested largely on the
testimony of the prosecutrix, that her credibility was
questioned, and that for purposes of impeachment defendant was entitled to offer proofs, even though of a
revolting nature, tending to show that prosecutrix was
a nymphomaniac. While we appreciate the reluctance
of the trial judge to permit testimony of the character
in question to be placed before the jury, we are constrained to hold that in a case of the character in
question such testimony is competent." 330 Mich at
462.

---

[1] The fact that a constitutional right is involved distinguishes this
case from cases upholding a legislative determination in nonconstitutional cases, that, for policy reasons, certain evidence can never be
legally relevant. A good example is the prohibition against references
to insurance in personal injury negligence cases. MCLA 500.3030;
MSA 24.13030, *Benmark v Steffen,* 374 Mich 155; 132 NW2d 48
(1965).

See, also, *People v Cowles*, 246 Mich 429, 431; 224 NW 387 (1929), *People v Smallwood*, 306 Mich 49, 54–55; 10 NW2d 303 (1943).[2]

While it is admitted that a certain amount of prejudice toward the complainant in each of the above cases would have been engendered by the admission of the excluded evidence (and did occur, if the cases were retried), nonetheless both trial and appellate courts were able to make a determination based on the facts of the case before it. *Bastian, Cowles,* and *Smallwood* demonstrate the difficulty of applying a blanket rule to this issue. Despite the need for sensitivity involved in this issue, the general rule on relevancy should be applied here, that courts may decide the issues of relevancy in the exercise of their discretion.[3] But in accordance with that need for sensitivity, alternatives should be developed to allow the greatest measure of support to victims of rape prosecutions.

[2] The majority opinion again seeks to sub-categorize credibility to distinguish the force of the cases cited above. *See* majority opinion, fn 1. However, it appears that by the plain language of the assailed statutory provision, impeachment by proof of mental abnormality—where such proof is made with evidence of the victim's sexual activities—would nevertheless be prohibited.

The majority opinion also cites *People v Bouchee*, 400 Mich 253; 253 NW2d 626 (1977), where the Supreme Court found: "We cannot agree with the apparent assumption of the trial court, and the express holding of the Court of Appeals, that the legitimacy of the Bouchee's four children related to the truthfulness or untruthfulness of the defendant or his wife as witnesses." I have no quarrel with that holding, but its citation in no way eliminates the issue. My concern over the statute is not its objective, in a broad sense the encouragement of rape prosecutions, but its absoluteness. So while I can agree in any single instance that the proposed evidence is more prejudicial than probative, I remain convinced that trial courts, with proper guidelines and under appropriate procedures, should be able to make that determination on a case-by-case basis. I cannot believe that in *all* cases the evidence would be more prejudicial than probative, the assumption the majority makes to avoid the constitutional issue.

[3] *Jarecki v Ford Motor Co, supra,* at 83:

"The relevancy of proffered evidence is within the sound discretion of the trial court, and that discretion will not be disturbed on appeal unless a clear abuse has been shown."

In summary, since it is possible for specific instances of the complainant's sexual conduct to be legally relevant (thus admissible) to the issue of credibility, it is necessary to inquire whether there are alternate methods which could protect the state's legitimate interest with less curtailment of the defendant's Sixth Amendment rights. More specifically, the question is whether the statute is so narrowly drawn that it does not exceed that which is necessary to protect the state's interest.[4] I must answer this question in the negative.

Statutes enacted in other jurisdictions include alternatives less stringent than in Michigan.[5] They, too, were enacted in response to public demands to protect complainants who take the stand. However, while all of these provisions are not the same, they generally provide that an *in camera* hearing must be held to determine the admissibility of the proposed evidence, at which time the trial judge will weigh the probative value of the offered evidence against the prejudice it would produce. This alternative provides a mechanism which can protect witnesses from unjustified harassment on the stand. Moreover, victims are assured of protection before the judicial system, thereby encouraging them to bring complaints. Lastly, it allows the defendant the *opportunity* to proffer evidence which may be admitted if its probative value clearly outweighs its prejudicial effect.

Even were these alternatives devised by some sister states put aside, I would be ineluctably drawn to the conclusion that the present statutory

---

[4] *See, e.g., Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973).

[5] *See, e.g.,* Texas Penal Code § 21.02; Iowa Code Ann § 782.4; Fla Stat Ann § 794.022(2); Cal Evid Code §§ 782 and 1103; Colo Rev Stat 1973, § 18-3-407; Nevada Rev Stat 48.069 and 50.090.

provision must fall, because the statute potentially forbids the admission of evidence relevant to the issue of consent.

The majority opinion only "consider[s] briefly" the relationship of the statute to the issue of consent and concludes:

"While evidence indicating that the complainant is a person of 'indiscriminate promiscuity', Comment, 43 U Chi L Rev 613, 624 (1976), may tend to prove her consent to sex on a particular occasion, a complainant's willingness to engage in sex with certain partners does not make it more likely that she consented in the incident for which defendant stands charged."

The majority's conclusion appears irreconcilable with *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), wherein the Supreme Court held that pattern evidence is relevant to the issue of consent or nonconsent. As in *Oliphant, supra,* at 490, "[t]he fact to be established, nonconsent, is crucial". Furthermore, as in *Oliphant, supra,* at 491, "[o]n the key issue of consent, there is directly contradictory testimony". The Supreme Court, after noting that the trial court had undertaken to balance the probative value of the evidence against its potential prejudicial effect, allowed evidence of the defendant's previous sexual encounters. It is difficult to conceive a reason why a defendant's sexual history should be treated differently than that of complainant's. Indeed, Justice LEVIN, dissenting, voiced concern over that very point, 399 Mich at 514–515. Therefore, I cannot accept the majority's conclusion.[6]

Trial courts must be given discretion to make a

---

[6] My reluctance on this point does not in any way indicate disagreement with the majority's treatment of reputation evidence as admissible to show that intercourse may have been consented to, *People v Ryno,* 148 Mich 137; 111 NW 740 (1907), and the cases cited therein.

determination akin to the decision made in *People
v Oliphant, supra.* But the statute as presently
designed is inflexible. The fact that evidence of-
fered is exceedingly probative and critical *to* a
defendant's defense cannot remove it from the
statute's prohibitions—no discretion whatsoever
being placed in the trial court. A clear illustration
of the difficulties engendered by this provision is
found in the trial judge's findings of facts in this
case. As noted previously, the trial judge found
that "[t]he fact that he would meet this young lady
at this hour of the night, that she would voluntar-
ily take him in the park and allow him sexual
pleasures with him *[sic]* and that he was going to
then go to her home for additional pleasures with-
out ever even knowing her name, I find it totally
unbelievable". Surely, if defendant had been able
to demonstrate that this particular course of con-
duct had been commonly engaged in by the com-
plainant, the finder of fact would have had to
examine the facts of the case under a different
light; yet, because of the statute, the defendant
lacked even the opportunity to ask the trial judge
to allow him to offer evidence along these lines.
The lack of flexibility in this approach, with its
denial of even an opportunity to a defendant to
offer such evidence, is not cured by the limited
exceptions contained in subsection (2). A state's
interest in putting criminals in jail and protecting
witnesses affords no warrant for so abridging the
fundamental rights of a defendant. It must always
be remembered that it may be an innocent defend-
ant who is precluded from even attempting to offer
what may be the most critical evidence he has to
exonerate himself.

Indeed, the United States Supreme Court has
held that the right of an accused to present a

defense, beyond taking the stand, "is a fundamental element of due process of law". *Washington v Texas,* 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). See also, *Pointer v Texas,* 380 US 400; 13 L Ed 2d 923; 85 S Ct 1065 (1965).

The majority opinion neglects the impact of the confrontation cases on the Michigan statute under review. A fair reading of *Washington v Texas, supra,* suggests that it may be constitutionally impossible to absolutely prohibit necessary cross-examination about specific acts to establish a defense. Opponents of this viewpoint will doubtlessly argue that even if it is admitted that it is possible for a factual situation to exist wherein the victim's sexual behavior with third persons is probative of consent, the prejudice engendered by the admission of the evidence would outweigh its probative value. That argument, though, neglects the constitutional due process aspect inherent in this issue. I must reiterate my concern about how best to effectuate the state's legitimate interest in this area. But if there are even "imaginable" situations where evidence of sexual behavior with third persons is only arguably probative of consent, then, because of the statutory exclusion, in those cases a due process violation would occur. In those situations, which admittedly may be small, a criminal defendant, presumed innocent, will be deprived of the opportunity to present potentially exonerating evidence without any recourse to show its probative value. Such a procedure would mock the right to a fair trial and denigrate the right to cross-examination. However, the right to cross-examination need not be wholly unfettered, to the destruction of the state's interest. There is no doubt but that constitutionally valid restrictions can be

placed on defendant's right of cross-examination, *Chambers v Mississippi, supra.*[7]

This being so, this Court should consider what remedy should be afforded to the defendant. As noted above, I am of the view that defendant is only entitled to the opportunity to offer such evidence. This opportunity should be afforded by a remand to the trial court where a hearing may be held at which time the defendant may offer the cross-examination which he sought to ask. It follows that upon hearing the proffered evidence the trial judge would rule on its admissibility in light of the standards set forth herein. If the evidence is ruled inadmissible, the conviction should be affirmed. If ruled admissible, a new trial should be ordered. For guidance in his ruling, I would point to *People v McLean,* 71 Mich 309; 38 NW 917 (1888), and *People v Whitfield,* 58 Mich App 585; 228 NW2d 475 (1975). These cases stand for the proposition that as a general rule evidence of specific acts of sexual activity with third parties is inadmissible; only in rare instances is evidence of this sort admissible. It is incumbent upon the defendant to strongly tie up the proffered evidence to the particular facts of the case; fishing expeditions have always been, and will continue to be, frowned upon. This is so because in all instances the protection of the complaining witness is a

---

[7] It should be emphasized that the problem is one of degree. With laudable motives, backers of the legislation in question sought to eliminate an unfair aspect of rape prosecutions, due in part to archaic notions surrounding the crime. In so doing, they crossed the constitutional line. It is only because that line was crossed that the statute must be found to be unconstitutional in part. And what is required is not outright repeal but rather an adjustment that keeps it within constitutional bounds. A less restrictively drawn statute can avoid the constitutional infirmities of the present statute. Once so drawn, the thrust of the state's valid interest in encouraging rape prosecutions can be given the fullest possible play free from constitutional challenge.

legitimate and proper concern. The interest is not a constant, however. For example, the state's interest diminishes in situations where the probative value of the evidence clearly outweighs its prejudicial effect. In sum, I would give the judge discretion, but I emphasize that it should be exercised cautiously, constantly aware of the general rule against admissibility.

Additionally, in all cases after this opinion, I would recommend that the prosecutor bring a motion *in limine* to preclude such questioning and evidence. An *in camera* hearing would then be held to determine the admissibility of the evidence. This course of conduct would protect both the complainant and the defendant.

This Court should again stress to trial judges that, in the rare instances where cross-examination is allowed after an *in camera* hearing, they should not then abdicate their judicial responsibility of running the proceedings by allowing defense counsel a free hand in harassing a witness. When defense counsel exceeds the proper character of cross-examination, the judge is always empowered to cut him off. As was said in *Alford v United States*, 282 US 687, 694; 51 S Ct 218; 75 L Ed 624 (1931), "[t]here is a duty to protect * * * [a witness] from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him".

Finally, defendant's last argument must be rejected. There was sufficient evidence on the record to support a finding of guilt beyond a reasonable doubt on the charged crime. *People v Booth,* 58 Mich App 466; 228 NW2d 425 (1975).

As noted above, I would hold that the evidentiary provision of the criminal sexual code is unconstitutional because it violates defendant's

rights of cross-examination and confrontation. As that provision can be severed from the rest of the statute, my holding in no way affects provisions of the statute not discussed in this opinion. I would remand for proceedings in conformity with this opinion.