Argued January 31, affirmed March 5, 1973

BANIF CORPORATION ET AL, *Respondents, v.*
BLACK (No. 372-176), *Appellant.*

507 P2d 49

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Fred A. Granata,* Portland, argued the cause and filed the brief for respondents.

Paul J. O'Halloren, Portland, submitted a brief amicus curiae for The Oregon Escrow Council, Inc.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

· ·This is an appeal in a declaratory judgment proceeding in which the plaintiffs sought to have certain alleged "orders" of the Real Estate Commissioner declared invalid. The alleged "orders" were in the ·form of three letters. Two were to "All Escrow Agencies," informing them that the Real Estate Commissioner ·had determined that ORS 696.240[1] requires that a broker may not use the services of an ·escrow agency owned by the broker or one in which he had a sufficient interest to permit him to exercise control. The third alleged "order" was a letter to the legal counsel for the Oregon Escrow Council, Inc., informing him that a procedure for complying with the statute formulated by the ·Oregon Escrow Council, Inc. which was prompted by the first two letters did not satisfy the Commissioner's interpretation of the statute.[2] ·

---

[1] ORS 696.240 provides:

"Every person, partnership or corporation licensed as a real estate broker, who does not immediately place all funds entrusted to him in his capacity as a real estate broker by his principal or others in a neutral escrow depository in this state, shall maintain a trust fund account with some bank or recognized depository located in this state and place all such entrusted funds therein upon receipt. The Real Estate Division shall establish rules and regulations to provide for records to be maintained and the manner in which such deposits shall be made."

[2] The counsel for the Oregon Escrow Council, Inc. in a letter dated May 19, 1971 informed the members of the council that it was his opinion that if a broker would place all funds *received by him,* which usually is an earnest money payment, in his client's trust account he could still have an escrow agency which he controlled close transactions and handle all other funds which the escrow agency received directly and handle the necessary documents. It is an obvious fact that a real estate broker's fee and an earnest money payment are often nearly equivalent sums. On July 15, 1971 the Real Estate Commissioner informed counsel for the Oregon Escrow Council, Inc. that it was his opinion that the procedure ·for compliance formulated by the Oregon Escrow

The Real Estate Commissioner's answer to the complaint denied that the above-mentioned letters were orders and counterclaimed for a declaratory judgment defining the duties of plaintiffs under ORS 696.240.

No factual issues are in dispute. It was stipulated that the plaintiff Banif Corporation dba Cascade Escrow Service Co. was a separate corporate entity that was owned and controlled by the same stockholders and directors who owned and controlled plaintiff Tri-State Realty, Inc. The circuit court decreed that: (1) The letters referred to above in the complaint were not orders. (2) Banif Corporation dba Cascade Escrow Service Co. was a neutral escrow depository within the meaning of ORS 696.240. (3) Banif Corporation dba Cascade Escrow Service Co. is neutral in its relationship to the other plaintiff Tri-State Realty, Inc. and to the general public and can act as an escrow agent in real estate sales made by Tri-State Realty, Inc.

The two basic issues involve the construction to be given ORS 696.240. The first is the construction to be given the term "neutral escrow depository." The second is, if ORS 696.240 is to be construed as prohibiting a broker from depositing funds in an escrow agency which he controls, does it also prohibit the broker from using such an escrow agency for *closing* transactions?

■■ I. The first issue arises from the fact that "escrow" by definition means "neutral," independent from the parties to the transaction. *McPherson v. Barbour,* 93 Or 509, 515-17, 183 P 752 (1919). The parties to the transaction are the buyer and the seller;

Council, Inc. did not "satisfy the prohibition against placing a transaction in an escrow agency under the control of the broker."

the broker is not a party and is capable of acting as an escrow depository despite his interest in his commission. *Tyler v. Cate,* 29 Or 515, 523, 45 P 800 (1896).

██ What is the meaning of the term "neutral escrow depository" in the context of ORS 696.240?

ORS 696.240 reads:

"Every * * * broker, who does not immediately place all funds entrusted to him * * * in a *neutral escrow depository* * * * shall maintain a trust fund account * * *." (Emphasis supplied.)

In determining what the legislature intended by using the word "neutral" in conjunction with the word "escrow," we consider the question under the accepted methods used by courts in attempting to ascertain legislative intent:

"'* * * The cardinal rule of statutory construction is to ascertain the meaning of the legislature and give it effect, if such meaning is constitutional. In determining the intent many things are taken into consideration: the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history behind the act, and numerous other matters, no one of which is absolutely controlling. as to the legislative intent. It is from a combination of all these that the intent is deduced: * * *.

"'* * * * *.'" *Fox v. Galloway,* 174 Or 339, 346, 148 P2d 922 (1944), as quoted in *State Highway Com. v. Rawson,* 210 Or 593, 610, 312 P2d 849 (1957).

*See also Haas v. Myers,* 10 Or App 495, 500 P2d 1068 (1972). Legislative history may be helpful in aid of statutory construction. *Thies v. Barnes,* 11 Or App 158, 501 P2d 1305 (1972); *Haas v. Myers,* supra.

What ·is now ORS 696.240 was first· enacted ·by the legislature in 1951.⑨ The available legislative his-tory is sparse, ·consisting, of the minutes of the Senate Financial Institutions Committee. Mr. Crose, the then Real Estate Commissioner, testified that one of the advantages of HB 197 (which also had five other sec-tions not relevant here) was that every deposit the broker received would be earmarked. (Senate Finan-cial. Institutions Committee Minutes March 13, 1951.)

HB 766 of the 1957 Legislature amended ORS 696.240, adding the phrase "in his capacity as a real estate broker." During the House committee hearings on this amendment, Real Estate Commissioner Hyde testified that the bill would provide for a separation of funds and Deputy Real Estate Commissioner Ross stated that it was very difficult for the auditors to separate ·the true real estate deals from the broker's other activities. The banks had also objected to the placing of all funds in one account. (House Financial Institutions Committee Minutes April 11, 1957.)

■ The legislative history of ORS 696.240 as re-flected by the committee hearings in 1951, and in 1957, when the statute was re-enacted as amended, indicates the purpose of the statute was to "earmark" funds en-trusted to brokers and to prevent the commingling of these moneys with the brokers' other funds.

---

⑨ The text of the 1951 enactment was:

"Every person, partnership or corporation licensed as a real estate broker who does not immediately place all funds en-trusted to him by his principal or others in a neutral escrow depository in this state shall maintain a trust fund account with some bank or recognized depository located in this state and place all such entrusted funds therein upon receipt. The Real Estate Board shall establish rules and regulations to pro-vide for records to be maintained and the manner in which such deposits shall be made." Oregon Laws 1951,. ch 157, § 1 (6) (HB 197).

A broker is capable of acting as an escrow depository. *Tyler v. Cate,* supra. Given that the purpose of the legislation was to prevent the commingling of funds by a broker, the word "neutral" adds meaning to the statute by indicating that the broker may not escape the duty to place the money entrusted to him in a "clients' trust account" by acting as the escrow depository himself. This conclusion is supported by *Medak v. DePrez,* 236 Or 31, 35, 386 P2d 805 (1963), where the court interpreted ORS 696.240 to the effect that a broker who placed the funds in a "clients' trust account" was acting as an escrow agency for the parties to the transaction.

██ The Commissioner bases his interpretation of ORS 696.240 in part on the fact that a proposed amendment to ORS 696.240, that would have eliminated the word "neutral," was not passed by the 1971 Legislature. This is of little significance. Legislative inaction is a weak reed upon which to lean in determining legislative intent. *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966). The reed is even weaker here because the amendment never reached the floor of even one chamber but instead was tabled by a subcommittee. The tabled bill (HB 1406) also contained an amendment to ORS 696.010 (10), and thus the tabling could be construed as being aimed at that portion and only affecting ORS 696.240 indirectly. We conclude that by "neutral escrow depository" the legislature meant an escrow depository other than the broker.

Is a broker-owned escrow agency licensed and regulated by the state to be considered a "neutral escrow depository" within the meaning of the statute? Paraphrased, the question we now consider is whether a broker-controlled escrow agency is to be considered a

"broker" or an "escrow agency." The trial court reached the conclusion that such a separate corporate entity was "neutral." The reason for reaching this conclusion was that such an agency is a separate corporate entity that is supervised and audited by the state.

The meaning of the term "neutral escrow depository" should not be taken out of the context of the statute. Mr. Justice Lusk was quoted in *State Highway Com. v. Rawson,* supra 210 Or at 611, as saying: " '* * * "A text without a context is a pretext." * * *' " We have interpreted the term to mean neutral from the broker as well as neutral from the parties to the sale. There is no doubt that a broker-owned escrow agency is not as "neutral" in reference to the broker as an independent escrow agency would be. The question really relates to whether it is neutral enough to relieve the broker from the duty of placing the funds entrusted to him in a "clients' trust account."

The trial court's answer strikes us as correct. We feel that the term "neutral escrow depository" should be construed in the light of the legislature's purpose and intent in enacting ORS 696.240. The purpose of ORS 696.240 is to prevent abuses arising from the commingling of funds entrusted to brokers with the brokers' other funds. In this light an escrow agency owned and/or controlled by the broker is no less neutral than any other licensed escrow agency because it is under the same duty as the other to place money deposited with it by the broker in a trust fund account.

II. The second issue need not be reached here because of the conclusion reached on the first issue.

Affirmed.