Argued September 21, resubmitted in banc December 8, reversed December 27, 1976, reconsideration denied February 2, petition for review denied March 29, 1977

STATE OF OREGON, *Respondent,*
*v.*
VERNON CHARLES JALO, *Appellant.*
(No. 92271, CA 5762)

STATE OF OREGON, *Respondent,*
*v.*
VERNON CHARLES JALO, *Appellant.*
(No. 92272, CA 5763)

557 P2d 1359

*Howard R. Lonergan,* Portland, argued the cause and filed the briefs for appellant.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

SCHWAB, C. J.

**SCHWAB, C. J.**

Defendant was indicted for three counts of first degree sodomy, ORS 163.405, and two counts of attempted first degree rape, ORS 161.405 and 163.375. Trial began in November 1975. That trial was aborted when, on motion of the state, the court declared a mistrial. Before being retried in January 1976, defendant moved to dismiss on grounds of double jeopardy. The motion was denied. Defendant was convicted on all counts and now appeals.

Resolution of the double-jeopardy issue depends upon resolution of whether defendant was entitled to introduce evidence of the complainant's previous sexual conduct.

The charges arose when the 10-year-old complainant reported that the 41-year-old defendant had engaged in and attempted various sexual acts with her. Defendant denied this, contending he had discovered that the girl had engaged in sexual conduct with his 13-year-old son, another young boy and her uncle, had told her he would inform her parents, and that before he did so she falsely accused him of the crimes charged.

In his opening statement to the jury in the first trial, defense counsel alluded to this line of defense:

> "Now, it's also our position that at about this time in the events two things come up which we feel are very material to this. One is that she told the defendant that she had had sexual intercourse with a * * * boy by the name of * * * at this time, and also he found out that his own son, his thirteen year old son was having sexual intercourse with her. We put this into the usual pattern, that if a young girl has sexual intercourse with a boy her age and she gets caught; she gets scared; she is afraid something will come of it; she gets her rear end paddled, but if she accuses an older man she is called a 'poor little dear' and she gets all the sympathy in the world."

At the conclusion of the opening statements the state moved for a mistrial on the ground that defense

counsel had violated ORS 163.475(3), which provides:

"* * * [I]n a prosecution under ORS 163.355 to 163.425, evidence of previous sexual conduct of a complainant shall not be admitted and reference to that conduct shall not be made in the presence of the jury."

A mistrial was declared over defendant's objection.

During defendant's second trial the court, pursuant to ORS 163.475(3), consistently ruled defense evidence of this nature inadmissible. The following was developed by offer of proof from defendant's son:

"Q * * * What took place when you and [complainant] were in the woods there in Canby in April?
"* * * * *

"A I don't know how to really say it, but there was—Well, I don't know how to put it in words that would be allowable.

"Q * * * You put it in words to me, so put it in words to His Honor the same way you put it in words to me.

"A Well, she went out and she was running, and I was chasing her and then she went into this bush and I couldn't find her and whenever I finally found her, she had her clothes off.

"Q She had her clothes what?
"A Off.

"Q All of them?
"A Yeah.

"Q What happened then?
"A Well, I don't know how to say it.

"Q You told it to me before; tell it to His Honor.
"* * * * *

"A Well, I don't know how to say it, but I guess you could call it sexual intercourse.

"Q Between you and her?
"A Yes.

"Q Did it happen more than once?
"A Yes, a few more times, few more times.

"Q And later did you have occasion to tell your father about that?
"A Yes."

Defendant also testified out of the presence of the jury as follows:

"Q * * * You did have a conversation with your son about this time?

"A Yes, I did.

"Q And what had he told you about his relationship with [complainant]?

"* * * * *

"A He told me that a number of times in the past that he had had oral sex with [complainant].

"Q Did he tell you not only oral sex, but other kinds of sex?

"A He did tell me he tried to have—well I will use the word sexual intercourse, but that is not the word he used, but we are in mixed company and I didn't get mad at him or anything because my children has always confided in me.

"Q Stick to the point. We have just a little bit of time. As a result of that, did you have any conversation with [complainant]?

"A Yes, I did.

"* * * * *

"A I was telling her that I thought that her parents should be notified. I should consult her parents about this because she is going to get herself in trouble, is what I told her.

"Q * * * Did she tell you about having sexual relations with anyone else besides your son?

"A She did tell me about a number of different people.

"Q Who are they?

"A [R].

"Q He's a boy about the same age as your son?

"A I think [R] is about an eighth grader in the same school my son goes to. I'm not sure.

"Q He's about fourteen?

"A Right.

"Q Who else did she talk about?

"A She did mention to me that she had sexual intercourse with her uncle, [B], somewhere in California.

"Q When you told her that you ought to tell her parents, did she say anything?

[ 849 ]

"A She just asked me not to; that she would stop."

■ The relevant double-jeopardy rules are stated in *United States v. Jorn,* 400 US 470, 91 S Ct 547, 27 L Ed 2d 543 (1971), *State v. Embry,* 19 Or App 934, 530 P2d 99 (1974), Sup Ct *review denied* (1975), and codified in ORS 131.525(2)(c).[1] Jeopardy having attached in defendant's first trial before a mistrial was declared, ORS 131.505(5)(b), the question becomes whether that trial was properly terminated over defendant's objection. For a mistrial to be properly ordered, error must have been committed.

Whether any error was committed at defendant's first trial depends upon whether ORS 163.475(3) is constitutional as applied to the facts at bar. Here the only evidence adverse to defendant came from the complainant. In response the defendant sought to place before the jury evidence, not inherently incredible, that he had discovered the young complainant's sexual misconduct and had threatened to tell her parents. This was offered to attempt to establish the inference, not inherently unreasonable, that the complainant had a motive to and did falsely accuse defendant of the offenses in question.

■ ORS 163.475(3) prohibits introduction of this evidence for this purpose. However, *Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974), compels the conclusion that ORS 163.475(3) infringes upon defendant's constitutional right to confrontation as here applied to prohibit evidence of the complainant's

---

[1] "A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(2) The trial court finds that a termination, other than by judgment of acquittal, is necessary because:

"* * * * *

"(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the state * * *

"* * * * *." ORS 131.525.

[ 850 ]

ulterior motive for making a false charge. In *Davis,* the defendant had been prohibited from cross-examining a crucial state's witness about a juvenile adjudication and the possible bias that could have arisen therefrom. The Supreme Court reversed:

> "We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted [the defense] line of reasoning had counsel been permitted to fully present it. But we conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the] testimony * * *.
>
> "* * * In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. * * *" 415 US at 317, 319.

The only difference between *Davis* and this case is that the policy of ORS 163.475(3) is to protect a sex-crime complainant. On the facts at bar, however, this policy must likewise be subordinated to the defendant's constitutional right to confrontation.

It follows that defense counsel's reference to admissible evidence in defendant's first trial was not an error and that there was no basis for the declaration of a mistrial. Therefore, defendant's second trial was barred by the double-jeopardy rules discussed above.

■ Finally, we note that a procedure exists to attempt to accommodate the tension between ORS 163.475 and the Confrontation Clause without creating the double-jeopardy problems upon which this case turns. ORS 135.037 provides that the court shall, upon motion of any party, hold a pretrial hearing at which the court may consider any matters which will facilitate trial. This statute is sufficiently broad to authorize pretrial consideration of and a ruling upon the constitutional problems that ORS 163.475 may create on a given set of facts. Had this procedure been invoked in this case the final disposition might have been different.

Reversed.

**FORT, J.,** concurring in part, dissenting in part.

The defendant assigns as error: (1) the denial of his request for a jury trial on his motion to dismiss for former jeopardy, (2) the denial of his motion to dismiss for former jeopardy, and (3) the exclusion of the testimony set forth by the majority.

I note that the majority does not expressly deal with the defendant's first assignment of error. However, I agree with the clear implication of its opinion that the question of whether defendant was formerly placed in jeopardy is a question of law for the trial court rather than a question of fact for the jury. ORS 135.470(1); Commentary, Proposed Oregon Criminal Procedure Code 166, Art 9, § 271 (1972). Thus, the trial court properly denied defendant's request for a jury trial on that issue.

I also agree with its approach to resolution of defendant's second and third assignments of error. As the court points out, the trial court's denial of defendant's motion to dismiss for former jeopardy was not error if the mistrial was properly granted. Also to determine whether the mistrial was properly granted we must assess first whether ORS 163.475, properly construed, prohibits the reference to the defense theory made in opening statement, and, if prohibited, second, whether such a prohibition is constitutional.

I also am in agreement that the defendant had the constitutional right to present the evidence embraced within his offer of proof at his trial and with the court's reasons therefor.

Where I find myself in disagreement with the majority, however, is in its conclusion that under the procedure here followed by the defendant, it was error for the trial court to grant the motion for mistrial in the first case. That result necessarily compels the conclusion that the first trial was not "properly terminated" within the meaning of ORS 131.525(2)(c). From my construction of ORS 163.475, combined with the

failure of the defendant to request an in camera hearing in the first trial, I conclude that the trial judge did properly terminate the first trial by granting the motion for mistrial. It follows, if I am correct in this conclusion, that jeopardy did not attach and thus that the denial of the motion to dismiss the second trial on that ground was not itself error.

ORS 131.525(2)(c) provides that a prosecution "*properly* terminated" because the trial court found that termination was "*necessary* because * * * *[p]rejudicial* conduct * * * makes it *impossible* to proceed with the trial *without injustice* to either [party]" does not constitute former jeopardy. (Emphasis supplied.)

In *State v. Embry,* 19 Or App 934, 530 P2d 99 (1974), Sup Ct *review denied* (1975), we considered the scope of judicial discretion in declaring a mistrial pursuant to ORS 131.525(2)(c):

"* * * The United States Supreme Court has long held that retrial is barred by the Double Jeopardy Clause if a mistrial has been declared without the defendant's consent under circumstances in which the ends of justice do not present a 'manifest necessity' for such action. *United States v. Jorn,* 400 US 470, 91 S Ct 547, 27 L Ed 2d 543 (1971); *United States v. Perez,* 22 US (9 Wheat.) 579, 6 L Ed 165 (1824). The constitutional rule and the language of ORS 131.525(2)(c) are functionally equivalent statements of the same concept. * * *

"* * * * *

"* * * A trial judge, then, is not to foreclose the defendant's option to go to the jury unless he reasonably concludes that the ends of public justice cannot be served by a continuation of the proceedings. It is impossible and undesirable to formulate mechanical rules by which to judge the propriety of declaring a mistrial under a given set of circumstances. Rather, each case must be evaluated on its own particular facts. *United States v. Jorn,* supra, 410 US at 474, 480, 485; *Illinois v. Somerville,* 410 US 458, 462, 93 S Ct 1066, 35 L Ed 2d 425 (1973). * * *

"* * * We construe the constitutional standard of

'manifest necessity' and the statutory standard 'impossible to proceed * * * without injustice' to require at least that a trial not be terminated if any reasonable alternative action is possible under the facts of each case." 19 Or App at 939-42.

The state contends and the majority so holds that such presentation of the excluded evidence is absolutely precluded by the terms of the statute. On appeal, the state argues alternatively that any presentation must be preceded by a hearing out of the presence of the jury at which the trial court would pass upon its admissibility.

Although absolute preclusion is supported by a literal reading of ORS 163.475(2), as we said in *State v. Rafal,* 21 Or App 114, 117, 533 P2d 1397 (1975), "[o]ur role * * * is to ascertain legislative intent, not to slavishly apply all statutes literally. *See, State v. Irving,* 268 Or 204, 520 P2d 354 (1974) * * *." The statute must be interpreted so as to carry out the intent of the legislature. *Pio v. Adcco, Love's Enter./ Kent,* 267 Or 540, 517 P2d 1189 (1974); *State v. Leathers,* 271 Or 236, 531 P2d 901 (1975). As we said in *Banif Corporation v. Black,* 12 Or App 385, 507 P2d 49 (1973):

"* * * [W]e consider the question under the accepted methods used by courts in attempting to ascertain legislative intent:

" ' "* * * The cardinal rule of statutory construction is to ascertain the meaning of the legislature and give it effect, if such meaning is constitutional. In determining the intent many things are taken into consideration: the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history behind the act, and numerous other matters, no one of which is absolutely controlling as to the legislative intent. It is from a combination of all these that the intent is deduced: * * *

" ' "* * * * *." ' *Fox v. Galloway,* 174 Or 339, 346, 148 P2d 922 (1944), as quoted in *State Highway Com. v. Rawson,* 210 Or 593, 610, 312 P2d 849 (1957)." 12 Or App at 389.

Our duty, however, is also, whenever possible, to construe ambiguous statutes so as to render them constititional. *Simons v. Smith,* 229 Or 277, 366 P2d 875 (1961); *City of Portland v. Welch,* 229 Or 308, 364 P2d 1009, 367 P2d 403 (1961). *See also: City of Portland v. White,* 9 Or App 239, 495 P2d 778, Sup Ct *review denied* (1972).

It is therefore necessary to examine ORS 163.475 in its entirety, and, if it appears ambiguous in a relevant particular, to examine its legislative history. That statute in its entirety provides:

"(1) For the purposes of this section, 'complainant' means the alleged victim of the crime for which the defendant is prosecuted.

"(2) In a prosecution under ORS 163.355 to 163.425, evidence of the sexual character or reputation for chastity of the complainant is not admissible for any purpose, and reference to the sexual character or reputation for chastity of the complainant shall not be made in the presence of the jury.

"(3) Except as provided in subsection (4) of this section, in a prosecution under ORS 163.355 to 163.425, evidence of previous sexual conduct of a complainant shall not be admitted and reference to that conduct shall not be made in the presence of the jury.

"(4) If a defendant wishes to elicit evidence or testimony concerning previous sexual conduct between himself and the complainant for the purpose of negating the existence of forcible compulsion in the alleged offense, the defendant must, during the trial, but prior to the offering of such evidence or making reference thereto, request a hearing to be held to determine whether the evidence will be admitted. The court shall conduct a hearing out of the presence of the jury and shall take such testimony and evidence as it deems necessary. If the court finds that the evidence or testimony sought by the defendant regarding the previous sexual conduct of complainant with the defendant is relevant for the purpose offered and is not otherwise inadmissible, the court shall issue an order stating what evidence may be introduced by the defendant, and the nature of the questions permitted at trial.

[ 855 ]

"(5) Nothing in this section shall limit the right of either the state or the defendant to impeach the credibility of a witness by proof of a prior conviction of a crime."

My examination of the legislative history satisfies me that this statute was intended to prevent two existing forms of harassment of complaining witnesses in sex offense cases: (1) admissibility of evidence of the complainant's prior sexual conduct with persons other than the defendant for the purpose of proving lack of compulsion by the defendant, and (2) admissibility of evidence of the complainant's general reputation for chastity, for the purpose of proving either lack of compulsion or the complainant's general lack of truthfulness.

The legislature explicitly made evidence of the complainant's prior sexual conduct with the defendant potentially admissible for the purpose of proving lack of compulsion. Admissibility is to be determined by the trial court after a hearing out of the presence of the jury. The legislative history indicates that the legislature believed that the relevance of such evidence depended upon the credible hypothesis that prior consensual sexual conduct with the defendant made compelled sexual conduct at the time in question less likely.

The issue of false accusation, as the majority holds, was a valid issue in the case, particularly where no claim of compulsion was involved. Thus the offered evidence was relevent to that issue on either of the following credible hypotheses: (1) the complainant sought revenge upon defendant for his threatening to tell her parents, or (2) complainant believed she would not be punished by her parents if they thought a mature nonrelative, rather than one of her peers, or a close adult relative had committed the sexual conduct disclosed to them.

The two precise questions now before us are whether ORS 163.475 was intended to exclude evidence of the complainant's prior sexual conduct with

persons other than the defendant for the purpose of proving motive to falsely accuse the defendant and whether, if the statute does not intend to exclude such evidence, nevertheless the statute was intended to require that a hearing out of the presence of the jury must precede admission of all evidence of prior sexual conduct of the complainant. I believe that the legislature did not consider these precise questions, and so "[i]n such situations, our duty is to deduce what the legislature probably would have done, had it considered the problem. *State v. Welch,* 264 Or 388, 394, 505 P2d 910 (1973)." *State v. Rafal, supra,* 21 Or App at 117.

The legislature was aware in enacting this statute of the constitutional limits upon statutory limitations of admissibility. A memorandum submitted to the legislative committees by Professor John Strong, an expert in the law of evidence, stated:

"It is probable that there is a point at which evidence becomes so highly probative of a fact in the case that to exclude it would constitute a denial of due process. Arguably this is the unarticulated proposition underlying Chambers v. Mississippi. But the probative value of the types of evidence involved here [to prove lack of compulsion] would seem to fall well short of this point.

"* * * * *

"One final point concerning the proposed legislation is that with respect to legislative rules relating to relevancy, it is generally unwise to formulate such rules too broadly. Relevancy consists of a relationship between an evidentiary item and a material fact sought to be proved. When the same type of evidence (prior sexual conduct) is frequently offered to prove the same material proposition (consent) it is legitimate to standardize a rule. *But it is impossible to anticipate a priori all of the possible propositions which may be material in some future sex offense prosecution, and given this unavoidable absence of foreknowledge it is impossible to say with certainty that evidence of prior sexual conduct will never have significant probative value no matter what it is offered to prove."* (Emphasis supplied.)

[ 857 ]

There was testimony before the Senate Committee on Judiciary that the proposed statute appeared constitutional in light of this memorandum. The minutes of the House Judiciary Committee of February 26, 1975, reveal the following:

> "Speaking to the constitutional problems involved in this type of legislation, Mr. [W. Michael Gillette, Solicitor General of the State of Oregon] indicated that the principles set down by the U. S. Supreme Court in *Wardius v. Oregon* would apply here. A state may place reasonable restrictions upon the admissibility of evidence for all kinds of reasons, but a stay may not utterly foreclose a defendant from offering relevant evidence which goes to his guilt or innocence. To utterly foreclose testimony with respect to the defendant's prior relationship with the victim would, be submitted, in far too many cases be excluding evidence that a jury could rationally consider as assisting them in determining whether force was used or whether there was consent on the part of the victim. *The degree to which such testimony may be permitted could be circumscribed by a series of procedural rules, but, in order to avoid constitutional problems, he believed such testimony would have to be permitted in some form.*" (Emphasis supplied.)

Thus I conclude that the legislature did not intend in adopting the statute totally to exclude such evidence as offered here for the purpose stated by defendant, but left to the courts the question of developing procedures within its in camera guidelines to assure that constitutionally admissible evidence could be received consistent with its basic objectives in enacting ORS 163.475.

Obviously, the minutes of the committee hearings support the conclusion that the legislature was concerned with possible abuse of the admissibility of evidence of prior sexual conduct of complainants. It set forth an in camera procedure for trial court evaluation of the potentially admissible evidence of prior sexual conduct between the complainant and the defendant for the purpose of proving lack of compulsion. I believe that the expressed legislative preference for this

procedure in the context of the one area of potentially admissible evidence it did specifically consider, reasonably construed, indicates an intention to require the in camera method in the present case as well.

I would, as stated, therefore hold, as does the majority, that the evidence offered by the defendant here was admissible to prove motive to falsely accuse defendant of the offenses charged, but would also hold that the defendant under ORS 163.475(4), *supra,* was first required in advance of his opening statement to offer it to the trial court out of the presence of the jury. Here the defendant made reference to the evidence in the first prosecution without first requesting an in camera hearing. Under the doctrine of *State v. Embry,* supra, the inquiry must be whether declaration of a mistrial was the only reasonable action possible for dealing with the defendant's failure to first request an in camera hearing.

Here a hearing out of the presence of the jury was held, after completion of the opening statements, upon the state's motion for a mistrial at the first trial. Even at that time the defendant did not request, as he could readily have done, that the court hear the testimony in support of the defense theory, nor was any offer of proof thereof made. Given the lack of opportunity to consider the evidence, the trial court in the face of the language of ORS 163.475(2) had no reasonable alternative to declaring a mistrial. *See: State v. Embry, supra.* Thus in view of the failure of the defendant in the first trial at any time prior to the granting of the state's motion for a mistrial to request an in camera hearing under ORS 163.475(4) to determine the admissibility of the child complainant's prior sexual conduct with others, and her alleged admissions relating thereto, the mistrial in the first prosecution was "properly granted" within the meaning of ORS 131.525(2)(c), supra. Accordingly, I would conclude here that the second prosecution was not barred by the double jeopardy clause.

[ 859 ]

The trial court at the second trial properly granted defendant what amounted to an in camera hearing on the evidence relating to motive for making a false accusation pursuant to ORS 163.475(4), together with its power to fashion appropriate procedures under ORS 1.160, which provides:

"When jurisdiction is, by the Constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes."

*See: K. v. Health Division,* 26 Or App 311, 552 P2d 840, Sup Ct *review allowed* (1976); *Wulff v. Sprouse-Reitz Co.,* 262 Or 293, 498 P2d 766 (1972). *See also:* ORS 135.037, discussed by the majority.

Here, however, the trial court erred by expressly holding in advance of the offer of proof that it would not consider its admission for any purpose and allowed it into the record only as an offer of proof. Thus it did not in fact consider at all its admissibility. I agree not only that such evidence was admissible for the purpose offered, but I also conclude that the legislature did not intend to exclude it by ORS 163.475. Thus in my opinion this judgment should not only be reversed, but it should be remanded for a new trial.