PEOPLE v PATTERSON

OPINION OF R. B. BURNS, J.

1. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT OF CONFRONTATION
—CROSS-EXAMINATION OF WITNESSES.

   *The right of confrontation protected by the Sixth Amendment
   secures principally the right to cross-examine witnesses; how-
   ever, there is no fundamental right to ask a witness questions
   that are irrelevant.*

2. RAPE—EVIDENCE—VICTIM'S SEXUAL BEHAVIOR WITH THIRD PER-
SONS—RELEVANCY.

   *Inquiry on cross-examination into a rape victim's sexual behavior
   with third persons is not relevant.*

3. EVIDENCE—RELEVANCY—PREJUDICE—PROBATIVE VALUE.

   *Evidence is relevant when it is sufficiently probative of a fact in
   issue to offset the prejudice its admission produces.*

4. RAPE—EVIDENCE—VICTIM'S SEXUAL BEHAVIOR WITH THIRD PER-
SONS—CREDIBILITY—RELEVANCY—PREJUDICE.

   *Evidence of a rape victim's sexual activity with third persons is
   in no way probative of the victim's credibility or veracity; if it
   were, the relevancy would be so minimal that it would not
   meet the test of prejudice.*

5. RAPE—EVIDENCE—VICTIM'S SEXUAL BEHAVIOR WITH THIRD PER-
SONS—CONSENT—PROBATIVE VALUE—PREJUDICE.

   *The fact that a rape victim has consented to sexual intimacy with
   a third party does not indicate consent to intimacy with the*

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 333–336.
   81 Am Jur 2d, Witnesses § 464.
[2, 4, 13] 65 Am Jur 2d, Rape § 86.
[3] 30 Am Jur 2d, Evidence § 1080.
[5, 6, 9, 10] 65 Am Jur 2d, Rape §§ 82, 83.
[7, 11] 16 Am Jur 2d, Constitutional Law § 552.
   21 Am Jur 2d, Criminal Law § 17.
[8] 29 Am Jur 2d, Evidence § 9.
[12] 5 Am Jur 2d, Appeal and Error § 798.

*defendant in a trial for third-degree criminal sexual conduct; the probative value of such evidence would not outweigh the prejudice to society and the criminal justice system of the consequences of its admission.*

D. E. Holbrook, P. J., Concurring in Result

6. Rape—Evidence—In Camera Questions—Victim's Sexual Behavior with Third Persons—Unusual Facts.

In camera *questioning of the complainant in a trial for criminal sexual conduct concerning prior sexual conduct with third persons may be necessary where unusual facts exist, but the issue should not be decided by the Court of Appeals where a decision of that issue is not necessary for disposition of the case.*

M. F. Cavanagh, J., Concurring Separately

7. Constitutional Law—Criminal Law—Criminal Sexual Conduct—Vagueness—Statutes.

*The statute on third-degree criminal sexual conduct is not impermissibly vague since it adequately provides fair notice of the conduct it proscribes; a law fails to meet the requirements of the due process clause to adequately provide fair notice of the conduct proscribed where it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and juries free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case (MCLA 750.520d; MSA 28.788[4]).*

8. Constitutional Law—Rape—Evidence—Victim's Sexual Conduct—Reasonable Doubt—Probative Value—Prejudice—Statutes.

*The statute which precludes, with certain exceptions, the admission of evidence of specific instances of the victim's sexual conduct in prosecutions for criminal sexual conduct is unconstitutional to the extent that it excludes evidence which, if received, might raise in the mind of a juror a reasonable doubt as to the defendant's guilt; where evidence possesses this degree of probative value, it may not be excluded on the ground of its prejudice to state interests (MCLA 750.520j; MSA 28.788[10]).*

9. Constitutional Law—Rape—Victim's Sexual Conduct with Third Persons—Evidence—Cross-Examination—Reasonable Doubt—Consent—Prejudicial Impact.

*A defendant is constitutionally entitled to cross-examine the*

*prosecutrix in a trial for third-degree criminal sexual conduct about prior sexual conduct with third persons if the witness's responses, when considered with other evidence in the case, might be sufficient to raise in the mind of a juror a reasonable doubt as to whether the intercourse was consensual; this rule applies irrespective of its prejudicial impact on the state's interests.*

10. RAPE—CROSS-EXAMINATION OF VICTIM—IN CAMERA HEARINGS—
    VICTIM'S SEXUAL CONDUCT WITH THIRD PERSONS—REASONABLE
    DOUBT—CONSENT.

*The prosecutrix in a trial for third-degree criminal sexual conduct must be made available for cross-examination in an in camera hearing before the trial judge regarding the prosecutrix's prior sexual conduct with third persons where the defendant offers proof that might raise a reasonable doubt in the mind of a juror whether the intercourse was consensual; the trial court must protect the witness where such evidence is ruled admissible from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate.*

11. CONSTITUTIONAL LAW—RAPE—EVIDENCE—ADMISSIBILITY—VICTIM'S
    SEXUAL CONDUCT WITH THIRD PERSONS—CONSENT—CREDIBILITY
    —STATUTES.

*Constitutional analysis of the statute regarding the admissibility of evidence, in a trial for criminal sexual conduct, of the prosecutrix's prior sexual conduct with third persons remains the same whether the evidence is offered to prove consent, and circumstantially damages credibility, or is offered to impeach credibility, and inferentially establishes consent (MCLA 750.520j; MSA 28.788[10]).*

12. CONSTITUTIONAL LAW—RAPE—EVIDENCE—VICTIM'S SEXUAL CON-
    DUCT WITH THIRD PERSONS—APPEAL AND ERROR—HARMLESS
    ERROR—CONSTITUTIONAL TEST—ADMISSIBILITY.

*A ruling that evidence regarding the prosecutrix's prior sexual conduct with third persons was inadmissible without having considered the evidence as measured by the constitutional standard regarding the admission of such evidence was harmless error in a trial for third-degree criminal sexual conduct where application of the constitutional test regarding such evidence would not mandate admission of the evidence.*

13. RAPE—EVIDENCE—VICTIM'S SEXUAL CONDUCT WITH THIRD PERSONS
    —RELEVANCY—CONSENT.

*Evidence of the prosecutrix's prior sexual conduct with third*

*persons may, on the facts of a given case, be logically relevant to the issue of consent in a trial for third-degree criminal sexual conduct.*

Appeal from Oakland, William P. Hampton, J. Submitted February 7, 1977, at Lansing. (Docket No. 27063.) Decided November 8, 1977.

William D. Patterson was found guilty of third-degree criminal sexual conduct. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Appellate Counsel, for the people.

*Lustig and Friedman, P. C.,* for defendant.

Amici Curiae: Legislative Task Force Southern Michigan Anti Rape Network (by *Allyn Ravitz).*

Before: D. E. Holbrook, P. J., and R. B. Burns and M. F. Cavanagh, JJ.

R. B. Burns, J. The defendant was found guilty by a jury of third-degree criminal sexual conduct, MCLA 750.520d; MSA 28.788(4). He appeals and we affirm.

The facts in this case are adequately set forth in the opinion written by Judge M. F. Cavanagh.

I would affirm the trial court on the basis of the reasoning set forth by Judge T. M. Burns in *People v Thompson,* 76 Mich App 705; 257 NW2d 268 (1977).

D. E. Holbrook, P. J. *(concurring in result).* This

writer has carefully considered my brother Judge M. F. CAVANAGH's opinion in this case and appreciates the dedicated work that is reflected in his fine opinion. Because I do not deem it necessary to agree with all of his reasoning in order to dispose of this case, I would concur in the *result*. The reason for this opinion is that *in camera* questioning should not be permitted, unless unusual facts exist or until the Michigan Supreme Court has spoken on the question. Further, if *in camera* proceedings are required under certain circumstances, this writer is apprehensive that innovative minds of defense counsel may advance claims that require *in camera* proceedings wherein the result obtained reveals only a fishing expedition was desired.

I have noted my brother Judge R. B. BURNS' opinion and likewise am in complete agreement with the *result* obtained by Judge T. M. BURNS in *People v Thompson,* 76 Mich App 705; 257 NW2d 268 (1977).

There may be a case in the future where this writer may have to declare his decision in the matter, but declines to do so in this case because he deems it unnecessary.

Affirmed as to result.


M. F. CAVANAGH, J. *(concurring separately).* A jury found defendant guilty of third-degree criminal sexual conduct, MCLA 750.520d; MSA 28.788(4). He was sentenced to a prison term of 7-1/2 to 15 years. His appeal is as of right.

Prior to trial defendant moved the court to quash the information. Defendant contended that the statute was unconstitutional because it was vague and uncertain, and because it impermissibly restricted his right to confront and cross-examine

the witnesses against him. The motion was denied by the trial court.

Before selecting the jury, the trial judge, on defendant's motion, conducted an *in camera* hearing to permit cross-examination of the complainant regarding her prior sexual conduct. The judge ruled at the outset of this hearing that cross-examination of the complainant before the jury as to her intercourse with her boyfriend, Dale Patterson (defendant's nephew), on the night of the alleged offense would be permissible under MCLA 750.520j(1)(b); MSA 28.788(10)(1)(b). However, the court found that cross-examination at trial into complainant's sexual relations with other men, on prior occasions, was prohibited by MCLA 750.520j; MSA 28.788(10). This ruling notwithstanding, defense counsel would be permitted to inquire into these matters at the hearing in order to establish a record for appeal. Defense counsel proceeded to cross-examine the prosecutrix. At the conclusion of the hearing the trial judge repeated his earlier ruling, stressing that it was compelled by the statute.

Defendant's appeal assails the constitutionality of the criminal sexual conduct statute on two grounds. He first claims it to be infirm because it is too vague to meet the due process requirements of the U.S. Constitution. Alternatively, he argues that the criminal sexual conduct statute offends the Sixth Amendment by denying him his right of cross-examination.

The same two issues were very recently addressed, with varying results, by two other panels of this Court.[1] In *People v Thompson* the panel unanimously rejected both of defendant's chal-

---

[1] *See People v Thompson,* 76 Mich App 705; 257 NW2d 268 (1977), *People v Dawsey,* 76 Mich App 741; 257 NW2d 236 (1977).

lenges to the statute. In *People v Dawsey* the panel was in agreement in rejecting the vagueness challenge to the statute, but differed in its disposition of the Sixth Amendment cross-examination issue. The *Dawsey* majority upheld the statute, stating:

"Defendant did not attempt to produce witnesses to testify about the complainant's reputation for chastity. Had he done so, and been denied, a serious question about the statute's constitutionality would have to be faced. See *Commonwealth v Manning,* 367 Mass 605; 328 NE2d 496 (1975). But here, where defendant only complains of his inability to attack the complainant's veracity with cross-examination about her sexual history, there is no basis for holding the statute unconstitutional."[2]

The dissenting opinion of N. J. KAUFMAN, J., after a thorough analysis of the statute and apposite case law, concluded that the evidentiary provision of the criminal sexual conduct statute was unconstitutional because it violated the defendant's Sixth Amendment rights of confrontation and cross-examination.

As to the first issue raised, I am in accord with *Dawsey, supra,* and *Thompson, supra,* and do not find the statute to be impermissibly vague.

The test was stated by the United States Supreme Court in *Giaccio v Pennsylvania:*[3]

"[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without

---

[2] *People v Dawsey, supra,* n 1, at 753.

[3] 382 US 399, 402–403; 86 S Ct 518, 520–521; 15 L Ed 2d 447, 450 (1966).

any legally fixed standards, what is prohibited and what is not in each particular case."

The statute adequately provides fair notice of the conduct proscribed.

My resolution of the Sixth Amendment issue, however, is not in harmony with the *Thompson* panel and *Dawsey* majority. Nor, although I find his reasoning generally more persuasive, am I in complete agreement with my brother Kaufman's dissent in *Dawsey.*

That part of the statute before us precludes, with exceptions not pertinent here, admission of "[e]vidence of specific instances of the victim's sexual conduct" in prosecutions for criminal sexual conduct. MCLA 750.520j(1); MSA 28.788(10)(1). The question confronting us is whether this statute is constitutional when applied to limit cross-examination designed to elicit facts tending to show that the intercourse was consensual.

Two arguments are made in support of the statute: (1) the evidence is logically irrelevant to a defense of consent; and (2) even assuming some probative value, the prejudicial effect of this evidence will always justify its exclusion.

The first argument persuaded the *Dawsey* majority, which stated it as follows:

"a complainant's willingness to engage in sex with certain partners does not make it more likely that she consented in the incident for which defendant stands charged."[4]

In *People v Oliphant*[5] the Michigan Supreme

---

[4] *People v Dawsey, supra,* n 1, at 751–752.
[5] 399 Mich 472, 492; 250 NW2d 443, 450 (1976).

Court held that evidence of the defendant's alleged prior sexual encounters with nonconsenting partners was probative of nonconsent in the act for which the defendant was on trial. The Court's finding of relevance seems to be the product of the following reasoning: (1) the prior acts were nonconsensual; (2) defendant "orchestrated" them to make them appear consensual; (3) the "orchestration" of the act for which the defendant was on trial was similar; (4) therefore this act was more probably nonconsensual. Simply stated, the Court found that on the issue of consent, the defendant's prior sexual conduct with third persons was probative of the defendant's conduct, under similar circumstances, with the prosecutrix.

In his dissenting opinion in *Oliphant*, Justice Levin considered the application of the majority's reasoning to the problem presented in this case, and concluded:

"While it is always possible to rationalize distinctions, it will be difficult to reconcile on a principled basis treating defendants differently from complainants."[6]

This writer has long subscribed to the view that the use made of similar acts evidence in our trial courts, and upheld by our appellate courts, frequently exceeds the narrow exception which the statute[7] was designed to create. However, the Supreme Court's view is controlling, and the rationale of *Oliphant* indicates that evidence of the prosecutrix's prior sexual conduct with third per-

[6] *Id.,* at 528; 250 NW2d, at 467. *See also People v Dawsey, supra,* n 1, dissenting opinion, at 765.

[7] MCLA 768.27; MSA 28.1050.

sons may, on the facts of a given case, be logically relevant to the issue of consent.[8]

Having concluded that this evidence may in some cases have probative value for the defense, the question becomes whether, consistent with a defendant's right of confrontation and cross-examination, this evidence can always be excluded as more prejudicial than probative, and, if not, under what circumstances the evidence may come in.

In *Thompson, supra,* the Court stated:

"While factual situations in which the victim's sexual behavior with third persons is arguably probative of consent are imaginable, the probative value of such evidence would not outweigh the prejudice to society and the criminal justice system of the consequences of its admission."[9]

The test of probative value versus prejudicial impact is a familiar one, and suggests a further analogy to the similar acts cases.[10] Perhaps because of its familiarity, *Thompson* seems to assume its applicability here. I would question that

---

[8] *See also,* Westen, *Compulsory Process II,* 74 Mich L Rev 191, 208–209, *State v Jalo,* 27 Or App 845, —; 557 P2d 1359, 1362 (1976). As indicators of subsequent behavior, specific instances of the actor's conduct are generally regarded as more reliable than the actor's reputation. *See* McCormick, Evidence (2d ed), § 186, p 443. The *Dawsey* majority, without explanation, reversed this evaluation, finding that specific instances of prior sexual conduct were without probative value *(See* text accompanying note 4, *supra),* but that exclusion of evidence regarding "complainant's reputation for chastity" would raise "a serious question about the statute's constitutionality". *People v Dawsey, supra,* n 1, at 753.
The *Thompson* panel conceded that "factual situations in which the victim's sexual behavior with third persons is arguably probative of consent are imaginable". *People v Thompson, supra,* n 1, at 712. (Footnote omitted.)
While I agree that such cases may occur, I stress here, as I will below, that I expect this occurrence to be most infrequent.

[9] *People v Thompson, supra,* n 1, at 712. (Footnote omitted.)

[10] *See, e.g., People v Oliphant, supra,* n 5, at 489–490, *People v Spillman,* 399 Mich 313, 319–320; 249 NW2d 73, 76 (1976).

assumption and the extension of the parallel to the similar acts cases. To examine their validity let us look to a comparison of the probative value and prejudicial impact of each of the two sorts of evidence.

In similar acts cases the court balances the materiality and probative value of prosecution evidence against the tendency of the evidence to confuse or distract the jury, or tempt it to convict the defendant because of his poor character.[11]

In cross-examination of the prosecutrix by defense counsel the balance would be between, on the one hand, the probative value of evidence tending to support the defendant's theory of the case, and, on the other, the embarrassment caused the prosecutrix, and the consequent likelihood of fewer rape victims coming forward to assist in the prosecution of suspected rapists.

The interests in conflict are very different in the two areas. One obvious difference is that the prejudice of similar acts evidence is to the defendant, whereas in cross-examination of prosecutrices the prejudice falls on the prosecution side. A major component of this prejudice to the state's interests is the deterrence of testimony by complainants who might otherwise come forward. The measure of this prejudice is made contemporaneously with the rule fixing the limits of cross-examination; it will not vary from case to case as does the prejudice of similar acts evidence.

In viewing this comparison, one must note that the criminal sexual conduct statute's resolution of conflicting interests infringes upon the defendant's right to cross-examine the witness for the purpose

[11] See People v Corbeil, 77 Mich App 691, 696–697; 259 NW2d 193 (1977), People v Fisher, 77 Mich App 6, 10–14; 257 NW2d 250, 253–255 (1977).

of producing evidence favorable to the defense. This infringement, and the constitutional question which it raises, are not involved in similar acts cases. The opinion in *Thompson* reflects no awareness of this distinction. Although the similar acts cases do support the proposition that prejudice to a defendant's right to a fair trial may justify the exclusion of prosecution evidence, neither the similar acts cases, nor any other authority cited by *Thompson,* support its apparent assumption that prejudice to state interests may justify the exclusion of defense evidence. I therefore regard application of the balancing test in this context as suspect, and turn, in search of the proper test to be applied to the statutory exclusion, to cases involving the constitutionality of similar limitations on presentation of the defense case.

The United States Supreme Court opinion in *Chambers v Mississippi* [12] began the analysis of a problem not unlike ours by describing the right which the statute before us would circumscribe:

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' *Dutton v Evans,* 400 US 74, 89; 91 S Ct 210; 27 L Ed 2d 213 (1970), *Bruton v United States,* 391 US 123, 135–137; 88 S Ct 1620; 20 L Ed 2d 476 (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer v Texas,* 380 US 400, 405; 85 S Ct 1065; 13 L Ed 2d 923 (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. E.g., *Mancusi v Stubbs,* 408 US 204; 92 S Ct 2308; 33 L Ed 2d 293 (1972). But its denial or significant diminution calls into question the

---

[12] 410 US 284, 295; 93 S Ct 1038, 1046; 35 L Ed 2d 297, 309 (1973).

ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined. *Berger v California,* 393 US 314, 315; 89 S Ct 540; 21 L Ed 2d 508 (1969)."

In *Chambers* the defendant was accused of murdering a police officer. A man named McDonald had confessed to the crime, but repudiated his confession. Prior to trial defendant moved the court to order McDonald to appear, and, in the event that the prosecution did not call him, for permission to examine McDonald as an adverse witness. McDonald was ordered to appear, but the court subsequently ruled that he was not "adverse" to defendant. Defendant called McDonald, but was prevented from cross-examining him about the repudiation of his confession by Mississippi's "voucher rule", which prevents a party from impeaching his own witness. Defendant was also prevented from calling other witnesses to testify that McDonald had confessed to them, on the ground that this would be hearsay.

The Supreme Court reversed, basing its decision on both the operation of the voucher rule and the exclusion of the hearsay. Of particular interest, in addition to the Court's remarks concerning the right of cross-examination, is the Court's reasoning regarding the hearsay. The Court conceded that "perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay", but noted that "exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed".[13] The Court then stated that the hearsay evidence "bore persuasive assurances of trustworthiness", thus satisfying the purposes of the hearsay rule, and "was

---

[13] *Id.,* at 302; 93 S Ct, at 1049; 35 L Ed 2d, at 313.

critical to * * * [the] defense".[14] The exclusion of
such evidence, coupled with the refusal to allow
cross-examination, was held to have denied the
defendant a fair trial.[15] In simplest terms, the
teaching of *Chambers* is that those accused of
crime have a constitutional right to present trust-
worthy evidence critical to the defense.

Of similar import is *Davis v Alaska*.[16] In *Davis*
defense counsel sought to show the juvenile record
and probationary status of a crucial prosecution
witness in order to establish a factual basis for an
argument to the jury on his possible prejudice and
bias. The trial court sustained objections to this
line of cross-examination, relying on statutes pro-
hibiting the disclosure of a juvenile's record. The
Supreme Court reversed. The Court first found
that "[t]he accuracy and truthfulness of * * * [the
witness's] testimony were key elements in the
State's case * * * ".[17] The Court next rejected the
claim that the cross-examination allowed defense
counsel was adequate to put his theory of bias and
prejudice before the jury.[18] The Court specifically
refused to challenge the state interest involved,
stating that this was unnecessary.[19] The Court also
refused to speculate as to whether the jury would
have accepted defense counsel's argument on the
witness's bias or prejudice, emphasizing that credi-
bility of the witnesses is for the jury.[20] The Court
concluded:

---

[14] *Id.*

[15] *Id.,* at 303; 93 S Ct, at 1049; 35 L Ed 2d, at 313.

[16] 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974).

[17] *Id.,* at 317; 94 S Ct, at 1111; 39 L Ed 2d, at 354.

[18] *Id.,* at 317–318; 94 S Ct, at 1110–1111; 39 L Ed 2d, at 354–355.

[19] "We do not and need not challenge the State's interest as a
matter of its own policy in the administration of criminal justice to
seek to preserve the anonymity of a juvenile offender." *Id.,* at 319; 94
S Ct, at 1112; 39 L Ed 2d, at 355.

[20] *Id.,* at 317; 94 S Ct, at 1111; 39 L Ed 2d, at 354.

"Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender."[21]

Leaving aside for the moment the question whether the evidence excluded in the case at bar presented a threat of "[s]erious damage to the strength of the State's case", the *Davis* analysis would appear to be applicable whenever the exclusion of defense evidence is proposed.

Although the issue raised by the instant case concerns the scope of the right of cross-examination, the purpose for which cross-examination is sought here is not to test the witness's perception, memory, or narrative ability. Rather, defense counsel would conduct this examination in order to prove facts tending to make more probable the theory that the intercourse was consensual. Thus, as in *Chambers, supra,* and *Davis, supra,* at issue here is the defendant's right to enter evidence supporting the defense theory of the case. This right also underlies cases involving the right to compulsory process and the right to compel testimony over a claim of privilege.[22] A brief review of those cases provides further guidance.

In *Washington v Texas*[23] the defense sought to call to the stand a witness who had previously been convicted and sentenced for the crime with which defendant was charged. The court sustained

---

[21] *Id.,* at 319; 94 S Ct, at 1112; 39 L Ed 2d, at 355.

[22] *Cf.* Westen, *supra,* n 8, at 211:

"[I]f the state's desire to spare a witness embarrassment is subordinate to the defendant's right of confrontation, it is also subordinate to his right of compulsory process, for the two clauses are simply different ways of defining the government's obligation to produce witnesses for the benefit of the defendant." (Footnote omitted.)

[23] 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

objections to this witness's testimony on the basis of Texas statutes providing that co-participants in a crime could not testify for one another. The Supreme Court reversed, holding that

"the petitioner * * * was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense."[24]

The disqualification involved in *Washington* was said to be arbitrary because it rested on a presumption that this category of defense witnesses was unworthy of belief. *Washington's* significance for our case becomes clear if it is recognized that an *irrebuttable* presumption of immateriality is no less arbitrary.

The question of the constitutionally permissible scope of the "informer's privilege" bears strong similarities to the issue at bar. In both areas the state seeks to encourage people to come forward with information helpful to law enforcement by restricting the accused's right to cross-examine the informant. In *Roviaro v United States*,[25] the Supreme Court considered the constitutional limits of the "informer's privilege", and stated:

"A * * * limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a

[24] *Id.*, at 23; 87 S Ct, at 1925; 18 L Ed 2d, at 1025. (Footnote omitted.)

[25] 353 US 53; 77 S Ct 623; 1 L Ed 2d 639 (1957).

fair determination of a cause, the privilege must give way."[26]

The Court proceeded to reverse the trial court for its refusal to compel disclosure of the informant's identity, stressing that the defendant had a "vital need for access to any material witness", and that the informant's "possible testimony was highly relevant and might have been helpful to the defense".[27]

Taken together, *Chambers, Davis, Washington* and *Roviaro* establish a constitutional standard for the admission of evidence favorable to the accused, but opposed by a strong state interest. In each case a part of that standard involves the probative value of the evidence, and in each case the requisite probative value is cast in terms of the potential impact of the evidence on the outcome of the case.[28] The rule which I would abstract from these cases is that, irrespective of its prejudicial impact on the state's interests, a defendant is constitutionally entitled to cross-examine the prosecutrix about prior sexual conduct with third persons if the witness's responses, when considered with other evidence in the case, might be sufficient to raise in the mind of a juror a reasonable doubt as to whether the intercourse was consensual.

---

[26] *Id.*, at 60–61; 77 S Ct, at 628; 1 L Ed 2d, at 645. (Footnote omitted.)

[27] *Id.*, at 63–64; 77 S Ct, at 629; 1 L Ed 2d, at 647. *See also, United States v Nixon,* 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974).

[28] In *Chambers* the test was "critical to * * * [the] defense" *(See* text accompanying n 14, *supra);* in *Davis* it was "[s]erious damage to the strength of the State's case" *(See* text accompanying n 21, *supra);* in *Washington* the Court spoke of testimony "vital to the defense" (388 US, at 16; 87 S Ct, at 1922; 18 L Ed 2d, at 1021); and in *Roviaro* the testimony "might have been helpful to the defense" *(See* text accompanying n 27, *supra).* Whether the focus was on harm to the prosecution's case, or help to the defense, the standard remained: evidence which might alter the result.

The variety of factual situations which will reach the trial courts within the context of prosecutions for criminal sexual conduct cannot be anticipated, but I can conceive of cases which would meet this constitutional standard.[29] The operation of the statutory bar to preclude effective cross-examination in such a case is unconstitutional.[30] However, I would emphasize that only in the extraordinary case would such evidence be admissible. By this opinion, I intend no invitation to ignore the legislative policy and the manifest will of the people. I would do no more than recognize the constitutionally required exception to the statutory rule. It should be incumbent upon the trial courts, in the first instance, to protect that exception; but they, as we, possess no power to enlarge upon it.

Some procedural guidelines in this novel area should be given to assist the trial bench. A defense attorney's request to question the prosecutrix regarding prior sexual conduct with third persons imposes upon the trial court the duty to consider the defendant's right to the admission of such evidence as measured by the test hereinbefore set forth. Proper application of this test assumes some knowledge of the testimony's content. It follows that, upon defense counsel's offer of proof sufficient to meet the constitutional standard, the prosecutrix must be made available for cross-examination before the trial judge. However, this preliminary inquiry need not be in open court. The strong state interest here favors the maximum protection of the prosecutrix's privacy consistent with defendant's right to a fair trial. Accordingly, this hearing should be conducted *in camera.*

---

[29] *See, e.g.,* Westen, *supra,* n 8, at 208–209, *People v Dawsey, supra,* n 1, dissenting opinion, at 765, *State v Jalo, supra,* n 8.

[30] *See State v Jalo, supra,* n 8.

An additional caution is appropriate for the rare case in which the evidence is ruled admissible. It is always the trial court's duty to protect the witness "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate".[31] The cross-examination of a prosecutrix demands unusual attention to this duty.

With his argument that the evidence was probative of consent, defendant joins the contention that the evidence was probative of credibility. In any case in which the theory of the defense is consent, evidence tending to sustain this theory will, of necessity, have a corollary tendency to impeach the prosecutrix's testimony that the intercourse was not consensual. However, this derivative probative value pertaining to the issue of complainant's credibility does not seem to be what defendant has in mind. Appellate counsel has not favored us with a precise statement of the purpose for the proposed examination, but suggests possible showings of "bias, motive for false accusations, or other compelling facts that may affect the credibility of the witness".[32] Whatever the specific purpose, if any, it is evident to me that defense counsel sought permission to draw out testimony on complainant's prior sexual conduct with third persons in order to damage the complainant's credibility and thereby make it less probable that the intercourse was nonconsensual.

The previously cited opinions in *Thompson* and *Dawsey* considered at length whether the statute's

---

[31] *Alford v United States,* 282 US 687, 694; 51 S Ct 218, 220; 75 L Ed 624, 629 (1931).

[32] Appellant's brief, at 7.

exclusion of such evidence is constitutional.[33] In my view, whether the evidence is offered to prove consent, and circumstantially damages credibility, or is offered to impeach credibility, and inferentially establishes consent, the constitutional analysis remains the same.[34]

In the instant case the trial judge ruled the evidence inadmissible on the basis of the statute's blanket exclusion. Failure to consider the admissibility of the evidence as measured by the constitutional standard was error. However, the court did in fact hold an *in camera* hearing to allow the defendant to offer the evidence he desired on a separate record for the purpose of this appeal. In contrast to the panels in *Thompson* and *Dawsey* we have before us in this case the evidence which the statute excluded. To complete resolution of this issue all that remains is to apply the constitutional test to this evidence.

Complainant's *in camera* testimony was that she had sexual relations with her boyfriend on the night in question. This was the second time that they had engaged in intercourse. Prior to this night she had had sexual relations with two other men, but had never before had relations with two men in one night. She had never been out all night, nor had she spent a night with a man at his home. She had never before had any "sexual trouble" with any man.

Under MCLA 750.520j(1)(b); MSA 28.788(10)(1)(b)[35] defense counsel was allowed to

---

[33] *People v Thompson, supra,* n 1, at 710–713, *People v Dawsey, supra,* n 1, majority opinion, at 745–750, 753, dissenting opinion, at 758–765.

[34] *See, e.g., Davis v Alaska, supra,* n 16, (right of confrontation denied where defense counsel prevented from cross-examining on prosecution witness's juvenile record and probationary status in effort to impeach witness by showing possible prejudice and bias).

[35] "Sec. 520j. (1) Evidence of specific instances of the victim's sexual

elicit before the jury the testimony regarding complainant's sexual relations with her boyfriend on the night of the assault.

As to the balance of this testimony I have no difficulty in concluding that it did not meet the constitutional standard requiring its admission either on the issue of consent or on the issue of credibility. The testimony establishes no basis whatever for a reasonable inference that the allegedly criminal sexual conduct was consensual. It is likewise devoid of facts which would support an inference of bias or otherwise undermine complainant's credibility. Because application of the constitutional test would not mandate admission of this evidence, I conclude that the error in failing to apply this test was harmless. Accordingly, I vote to affirm defendant's conviction.

For the sake of clarity I summarize what I would hold on this issue. The statute is unconstitutional to the extent that it excludes evidence which, if received, might raise in the mind of a juror a reasonable doubt as to a defendant's guilt. Where evidence possesses this degree of probative value, it may not be excluded on the ground of its prejudice to state interests; *i.e.,* I would specifically reject the balancing test and with it the argument that the statute reflects a universally valid balance between the probative value and the prejudicial impact of the evidence. Upon defense counsel's offer of proof found to meet the constitutional test, a defendant should be entitled to an *in camera*

conduct * * * shall not be admitted * * * unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

* * *

"(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

hearing at which he may conduct, for the court's consideration, the proposed cross-examination. At this hearing the sole question for the trial court should be whether the evidence meets the constitutional test; if it does, it must be admitted, if not, it must be excluded. The test on review would be whether the trial court's decision was clearly erroneous.

Finally, I would hold that the exclusion of the evidence in this case did not deny defendant his constitutional right to present his defense.

Defendant's other arguments do not merit discussion.